Weaver, J.
Defendant appeals the judgment of the Court of Appeals affirming his conviction for one count of first-degree criminal sexual conduct, MCL 750.520b(l)(b)(ii), and two counts of second-degree criminal sexual conduct, MCL 750.520c(l)(b)(ii).[1] We granted leave limited to whether the trial court erred so as to require reversal in allowing the prosecutor to cross-examine a defense witness concerning a prior charge for which he was acquitted.
We conclude that the overly broad holding of People v Falkner, 389 Mich 682, 695; 209 NW2d 193 (1973), which states “no inquiry may be made regarding prior arrests or charges against” a witness that did not result in a conviction, is inconsistent with precedent and with the approach to the admission of evidence that we have followed since the adoption of *758 the Michigan Rules of Evidence.[2] We hold, consistent with existing precedent and the Michigan Rules of Evidence, that a trial court may allow inquiry into prior arrests or charges for the purpose of establishing witness bias where, in its sound discretion, the trial court determines that the admission of evidence is consistent with the safeguards of the Michigan Rules of Evidence.
We conclude that evidence of the witness’ prior arrest without conviction to show the witness’ bias was admissible under MRE 402 and MRE 403. The judgment of the Court of Appeals is affirmed and the defendant’s conviction is upheld.
i
Defendant, Neto Layher, was convicted by jury over his general denial of three counts of criminal sexual conduct involving his minor niece, the complainant. During trial, all witnesses were sequestered.
In the summer of 1996, complainant was fifteen and staying with her grandmother, defendant’s mother. Complainant, who is mentally slow, testified at trial that three incidents occurred sometime before July 5, 1996. During the first incident, defendant rubbed complainant’s breasts and genitals, first over and then under her clothes, while she was sleeping in her grandmother’s bedroom. Complainant testified that she did not tell anyone because she was scared. The second incident happened when she was sleeping on the floor in her grandmother’s room while her grandmother and complainant’s sibling slept in the bed *759 nearby. Defendant woke her by touching her over her clothes in the same manner as before. He left the room and then returned again, this time touching her under her clothes as before. Defendant asked her if she would tell. Again, she testified that she said she would not because she was scared. The third incident occurred when complainant was lying on her grandmother’s bed. No one else was in the room. She testified that defendant gave her five dollars because she was not going to tell and then took the money back. Defendant again began rubbing complainant under her clothes. During this incident, complainant testified that defendant penetrated her vagina with his finger.
Complainant and her siblings had, throughout their lives, been moved from the home of one family member to the next. As a result, none of the witnesses were able to testify with specificity regarding when the children were at one home or another. For example, complainant’s grandmother testified that the children were not with her at the beginning of the summer of 1996, but, rather, were with her at the end of the summer. The grandmother’s testimony was inconsistent with that of all the other witnesses.
Sometime after the incidents described above, complainant and her two siblings went to live with Karen Byrd, the girlfriend of another uncle. Complainant and Ms. Byrd testified that complainant told Ms. Byrd of the incidents. Ms. Byrd then contacted the authorities. Soon after the authorities became involved, complainant and her siblings were moved from Ms. Byrd’s home to the home of Christine (Layher) Walton, an aunt.
*760 While the children were staying with Ms. Walton, Robert (Bob) Ganger, who was working for defense counsel, was sent by defense counsel to investigate the case. Mr. Ganger testified that he was sent in response to a call defense counsel received saying that Ms. Walton and complainant wanted to talk to an attorney. It was not specified who made that call. Mr. Ganger first visited with Ms. Walton and then with Ms. Walton and complainant on two additional visits. Mr. Ganger became the lead defense witness as a result of these conversations.
. As a result of the conflict in testimony between Mr. Ganger and complainant, the prosecution sought to introduce the fact that Mr. Ganger had been tried and acquitted on the charge of criminal sexual conduct involving a child under the age of thirteen. The prosecution reasoned:
My position is that is certainly relevant in this case to show bias. Bias is very important for the jury to hear. And this particular charge ... is necessary for the jury to hear about because of this particular case and the fact that Neto Layher is charged with a criminal sexual conduct.
I certainly think that that shows bias that he’s going to try to assist another person who has been charged with the same thing he’s been charged with, and obviously I would believe he would think wrongly accused of.
The trial court allowed the cross-examination to proceed. The Court of Appeals affirmed[3] the trial court’s ruling on this evidentiary matter. We granted leave to appeal, limited to whether the trial court abused its discretion by allowing introduction of this evidence of Mr. Ganger’s prior arrest and acquittal.
*761 ii
A
We review evidentiary decisions for abuse of discretion. People v Starr, 457 Mich 490, 494; 577 NW2d 673 (1998); People v Bahoda, 448 Mich 261, 289; 531 NW2d 659 (1995). The trial court’s decision on close evidentiary questions cannot “by definition” be an abuse of discretion. People v Golochowicz, 413 Mich 298, 322; 319 NW2d 518 (1982). However, where decisions regarding the admission of evidence involve preliminary questions of law such as whether a rule of evidence or statute precludes admissibility, our review is de novo. People v Lukity, 460 Mich 484, 488; 596 NW2d 607 (1999).
Logical relevance is the foundation for admissibility. People v VanderVliet, 444 Mich 52, 60; 508 NW2d 114 (1993). Logical relevance is defined by MRE 402 and MRE 401. MRE 402 provides:
All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible.
As defined by MRE 401, “relevant evidence” is evidence that has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
B
The prosecutor introduced evidence of Mr. Ganger’s past arrest and acquittal of criminal sexual conduct *762 involving a child less than thirteen to create an inference of bias on the part of Mr. Ganger in favor of defendant. Bias is a common-law evidentiary term used “to describe the relationship between a party and a witness ... in favor of or against a party. Bias may be induced by a witness’ like, dislike, or fear of a party, or by the witness’ self-interest.” United States v Abel, 469 US 45, 52; 105 S Ct 465; 83 L Ed 2d 450 (1984).
In Abel, the United States Supreme Court addressed the issue of bias in the context of the Federal Rules of Evidence (on which the MRE are modeled). The defendant and a defense witness in that case belonged to the Aryan Brotherhood, a secret prison gang that encouraged members to commit perjury, theft, and murder to protect each other. The Abel Court concluded that evidence showing a witness’ membership in the gang was sufficiently probative of bias to warrant its admission. The Court first noted that the FRE govern the admissibility of such evidence, but that, while the rules address impeachment of a witness by character evidence and conduct (FRE 608), by evidence of a criminal conviction (FRE 609), and by showing of religious beliefs or opinion (FRE 610), they do not expressly address impeachment for bias. Id. at 49. The Court concluded that possible bias of a witness is a permissible basis of impeachment under the FRE despite the omission of any express treatment of impeachment for bias. After reiterating the nature and admissibility of relevant evidence under FRE 401 and FRE 402, the Court stated at p 51:
A successful showing of bias on the part of a witness would have a tendency to make the facts to which he testi *763 fied less probable in the eyes of the jury than it would be without such testimony.
We think the lesson to be drawn from all of this is that it is permissible to impeach a witness by showing his bias under the Federal Rules of Evidence just as it was permissible to do so before their adoption. . . .
The Court explained the meaning of “bias” as follows:
Bias is a term used in the “common law of evidence” to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness’ like, dislike, or fear of a party, or by the witness’ self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness’ testimony. [Id. at 52.]
Addressing first the relevance inquiry of FRE 401, the Court concluded that evidence of the defendant’s and defense witness’ membership in the Aryan Brotherhood “supported the inference that [the witness’] testimony was slanted or perhaps fabricated in [the defendant’s] favor. A witness’ and a party’s common membership in an organization, even without proof that the witness or party has personally adopted its tenets, is certainly probative of bias.” Id. Having found the evidence relevant, the Court then addressed whether the prejudicial effect of this evidence substantially outweighed its probative value under FRE 403. The Court noted that the trial court had taken reasonable precautions (not permitting the *764 impeachment witness to mention the gang by name, and giving a limiting instruction concerning the use of the testimony) and concluded that these precautions ensured that “the admission of this highly probative evidence did not unduly prejudice the respondent.” Id. at 55. The Court accordingly found no abuse of discretion in the trial court’s decision to admit the impeaching testimony.
We agree with the Abel Court that evidence of bias is “almost always relevant.” We have consistently reaffirmed our observation in People v MacCullough, 281 Mich 15, 26; 274 NW 693 (1937), that “The interest or bias of a witness has never been regarded as irrelevant.” Indeed, as we note below, MRE 611(b) states that “[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility.”
c
Regarding the admissibility of evidence concerning Mr. Ganger’s prior arrest and acquittal, the trial court reasoned:
This is cross-examination. The Prosecutor is entitled to elicit information to support any claim that she may have that he’s biased. She certainly could argue on the one hand that the witness would be biased because he is employed, I would assume, by you and your client. She could also and apparently seeks to do so, argue that as a result of him being accused and acquitted of a crime which he claims he did not do of a very similar nature, that he is therefore biased in the Defendant’s favor and presumably would color his testimony to help the Defendant, another person who he may believe would also be wrongly accused of the same crime.
*765 We agree with the trial court that the evidence of Mr. Ganger’s prior arrest and acquittal is logically relevant under MRE 401. As noted in Abel, supra at 52, “[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence that might bear on the accuracy and truth of a witness’ testimony.” Further, the trial court has wide discretion regarding admissibility of bias during cross-examination under MRE 611.[4] Wischmeyer v Shanz, 449 Mich 469, 475; 536 NW2d 760 (1995). Mr. Ganger’s prior arrest for, and acquittal of, a charge involving the sexual abuse of a child supports the inference that Mr. Ganger would color his testimony in favor of defendant.
Nevertheless, logically relevant evidence may be excluded as “otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court.” MRE 402.[5] We must therefore consider whether, despite its logical relevance, the evi *766 dence of Mr. Ganger’s prior arrest and acquittal should have been excluded.
m
On appeal, defendant argues that the evidence should be excluded pursuant to the “rule” of People v Falkner, as well as by analysis under MRE 403 and MRE 609.
A
First, Defendant argues that the admission of a witness’ prior arrest without conviction violates the holding in Falkner. In 1973, Falkner held that
in the examination or cross-examination of any witness, no inquiry may be made regarding prior arrests or charges against such witness which did not result in conviction ... . [Id. at 695.][6]
This Court has not addressed whether Falkner precludes the use of evidence of a prior arrest or charge without conviction where offered for the purpose of showing witness bias.
The Court of Appeals acknowledged that Falkner’s holding was “phrased broadly,” but created an exception that would allow evidence of a prior arrest that did not result in a conviction where it “is not used to *767 directly impeach the witness but to bring out the witness’ bias or interest in the outcome of the case.” 238 Mich App 578, quoting People v Hogan, 105 Mich App 473, 483; 307 NW2d 72 (1981). The panel relied on Court of Appeals cases that it characterized as limiting Falkner’s prohibition of the use of prior arrests for the purpose of impeaching a witness’ credibility generally. Hogan, supra, and People v Bostic, 110 Mich App 747; 313 NW2d 98 (1981).
Falkner speaks generally about the impeachment and discrediting of witnesses by use of prior arrests.[7] However, as we have observed above, Falkner did not address the well-established authority holding that cross-examination of a witness regarding bias is “always relevant.” MacCullough, supra. Because Falkner’s holding did not exclude impeachment regarding a witness’ bias, we conclude that an express limitation of Falkner is warranted and reasonable. As explained in Davis v Alaska, 415 US 308, 316; 94 S Ct 1105; 39 L Ed 2d 347 (1974), quoting 3A Wigmore, Evidence (Chadboum rev), § 940, p 775:
A more particular attack on the witness’ credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is “always relevant as discrediting the witness and affecting the weight of his testimony.”
*768 Falkner’s arguably absolute prohibition of the introduction of prior arrests without conviction conflicts with this Court’s traditionally liberal view of cross-examination regarding witness bias. Wilson v Stilwill, 411 Mich 587, 599; 309 NW2d 898 (1981)(“There is ‘a general canon that on cross-examination the range of evidence that may be elicited for any purpose of discrediting is to be very liberal,’ ” quoting 3A Wigmore, Evidence (Chadboum rev), § 944, p 778 (emphasis in original); Hayes v Coleman, 338 Mich 371, 381; 61 NW2d 634 (1953)(“It is always permissible upon the cross-examination of an adverse witness to draw from him any fact or circumstance that may tend to show his relations with, feelings toward, bias or prejudice for or against, either party, or that may disclose a motive to injure the one party or to befriend or favor the other”).
A proponent’s attempt to discredit a witness’ testimony by showing that the witness may be biased in favor of, or against, a party or witness, is highly relevant, particularly in cases like the present, where that witness is effectively the sole source of evidence that contradicts the accuser. Denying the factfinder this type of evidence undermines the truth-seeking process.
We therefore hold that evidence of bias arising from past arrest without conviction is admissible if relevant, as long as its probative value is not substantially outweighed by the danger of unfair prejudice. MRE 403. Because prejudicial inferences may also be drawn from evidence of past arrests, “we instruct the bench and bar to employ the evidentiary safeguards already present” in the Michigan Rules of Evidence in *769 determining the admissibility of a past arrest that did not result in conviction. VanderVliet, supra at 74.
B
We next apply this holding to the case before us. In doing so we address the defendant’s argument that the admission of the evidence violated MRE 403. MRE 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
Mr. Ganger’s testimony on direct examination about his conversations with complainant and her aunt, Ms. Walton, contradicted the complainant’s, and was offered by the defense to discredit complainant’s accusations. Most significantly, Mr. Ganger testified that the complainant told him that the defendant had not sexually assaulted her and that she had been threatened by the prosecution with perjury if she refused to testify.
As a result of these and other contradictions, the prosecutor offered and was allowed by the trial court to pursue the following line of questioning on cross-examination of Mr. Ganger to impeach him:
Q. Mr. Ganger, isn’t it true that in 1992 you were charged with criminal sexual conduct first degree against a child under the age of 13?
A. Yes, I was.
Q. And you were tried for that, correct?
A. Yes, I was.
Q. And you were acquitted, is that correct?
*770 A. Yes, I was.
Q. And you were aware when you went to speak to Olivia and Christine that Mr. Layher was charged with criminal sexual conduct in the first degree?
The prosecution’s stated purpose for the admission of this evidence was to establish bias that may have affected both Mr. Ganger’s manner of investigating the case and his testimony at trial.
The defendant contends that evidence of Mr. Ganger’s prior arrest and acquittal on charges of criminal sexual conduct against a child had “nothing to do” with the case against defendant. We disagree. Mr. Ganger, like defendant, denied that he was guilty of the charges. Conceivably, being wrongly accused of the same charge pending against defendant, Mr. Ganger would perhaps be overly vigilant in researching the case and consciously or unconsciously slant his testimony at trial. Furthermore, the fact of Mr. Ganger’s acquittal on the charge lessens the prejudicial effect. We hold that the trial court did not abuse its discretion in determining that the probative value of Mr. Ganger’s past arrest and acquittal on the same charge pending against defendant was not substantially outweighed by the danger of unfair prejudice. MRE 403.
c
Finally, the defense argues that admission of Mr. Ganger’s prior arrest and acquittal violated MRE 609. We disagree. MRE 609 provides for the impeachment of witnesses by evidence of convictions of crimes containing elements of dishonesty or false statement or crimes containing an element of theft with certain *771 conditions. MRE 609 only applies to the use of past convictions-, it does not address the use of past arrests that do not result in convictions for the purpose of showing a witness’ bias. We therefore reject and need not further address the defense argument that MRE 609 precluded admission of past arrests that do not result in conviction.
iv
For the reasons stated, the judgment of the Court of Appeals and the defendant’s conviction are affirmed.
Corrigan, C.J., and Taylor, Young, and Markman, JJ., concurred with Weaver, J.

 The trial court sentenced defendant to twenty to forty years imprisonment for the first-degree esc conviction and to concurrent terms of eight to fifteen years imprisonment for each second-degree esc conviction.

 The Michigan Rules of Evidence were adopted by this Court on January 5, 1978. 402 Mich lxxxviii.

 238 Mich App 573; 607 NW2d 91 (1999).

 MRE 611 provides in pertinent part:
(b)' Scope of cross-examination. A witness may be cross-examined on any matter relevant to any issue in-the case, including credibility. The judge may limit cross-examination with respect to matters not testified to on direct examination.

 As to whether Falkner is a “rule adopted by the Supreme Court” within the meaning of MRE 402, we need not decide, in the context of this case, whether that phrase applies to evidentiary “rules” established by decisions of this Court that predate the adoption of the MRE. As the United States Supreme Court in Abel assumed that the “rule” concerning impeachment for bias existed before the adoption of the FRE and continued to exist thereafter, we assume, for the purposes of this case, that the Falkner “rule” similarly continued to exist after the adoption of the MRE. Abel, supra at 51-52.

 People v Rappuhn, 390 Mich 266; 212 NW2d 205 (1973), relied on Falkner to hold the impeachment of a criminal defendant with evidence that he was previously charged with the same offense for which he stood trial warranted a new trial. Rappuhn stated that Falkner “speaks to the impeachment of any witness by use of an arrest record.” Rappuhn at 271. In People v Sanders, 394 Mich 439, 440; 231 NW2d 639 (1975), this Court characterized Falkner as prohibiting the impeachment of a witness’ credibility “by reference to an arrest which does not result in conviction.”

 Specifically, Falkner dealt with the impeachment of two defense alibi witnesses with evidence of their prior convictions for receiving stolen property. In the course of conducting this proper impeachment, the prosecutor also questioned the witnesses, without objection from the defendant, regarding the fact that these convictions represented reductions from the charged offense of unarmed robbery. 389 Mich 686-687.