# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
October 31, 2017

v

THABO MANGEDWA JONES,

Defendant-Appellant.

No. 330759
Wayne Circuit Court
LC No. 12-003749-01-FH

Before: SERVITTO, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of reckless driving causing death, MCL 257.626(4). Defendant was sentenced to 3 to 15 years' imprisonment for the conviction. We reverse.

This appeal arises from a fatal motor vehicle accident involving defendant and the decedent, John Ortiz, on March 2, 2012, near the intersection of I-94 and Livernois Road in Detroit, Michigan. Witnesses observed defendant driving erratically and at excessive speeds immediately before the accident. Defendant's vehicle slammed into the rear end of Ortiz's vehicle hard enough to send it careening across multiple lanes of traffic, causing Ortiz's almost instant death. At trial, defendant claimed that the accident occurred when Ortiz pulled suddenly into defendant's lane and defendant lost control of his vehicle. His defense theory was that Ortiz's action constituted a superseding cause of the accident, breaking the causal connection between defendant's conduct and Ortiz's death and relieving defendant of criminal liability. In support of his theory, defendant sought to admit evidence that Ortiz's blood alcohol content (BAC) measured 0.201 at the time of the accident, and evidence of Ortiz's two prior DUI convictions. The trial court denied defendant's request to admit the proposed evidence. Defendant was subsequently convicted.

On appeal, defendant first challenges the trial court's suppression of Ortiz's BAC at the time of the accident, arguing that it was "highly relevant" to the issue of Ortiz's contributory negligence. We agree.

This Court reviews preserved evidentiary claims for an abuse of discretion. *People v Houston*, 261 Mich App 463, 465; 683 NW2d 192 (2004). A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Where a trial court's decision regarding

-1-

the admissibility of evidence involves a question of law, this Court's review is de novo. *People v Layher*, 464 Mich 756, 761; 631 NW2d 281 (2001). Evidentiary errors require reversal where, after an examination of the entire record, it appears more probable than not that the trial court's error was outcome determinative. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013).

Reckless driving causing death contains an element of causation, MCL 257.626(4)[1], and the prosecutor was therefore required to prove causation beyond a reasonable doubt. In the criminal context, "causation" has acquired a technical meaning, and proving causation requires evidence to support both factual causation and proximate causation. *People v Feezel*, 486 Mich 184, 194; 879 NW2d 278 (2015) (opinion by CAVANAGH, J.), citing *People v Schaefer*, 473 Mich 418, 435; 703 NW2d 774 (2005), overruled in part on other grounds by *People v Derror*, 475 Mich 316, 320; 715 NW2d 822 (2006). "Factual causation exists if a finder of fact determines that 'but for' defendant's conduct the result would not have occurred." *Feezel*, 486 Mich at 194. "Proximate causation 'is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural.' " *Id.*, quoting *Schaefer*, 473 Mich at 436. "If the finder of fact determines that an intervening cause supersedes a defendant's conduct such that the causal link between the defendant's conduct and the victim's injury was broken, proximate cause is lacking and criminal liability cannot be imposed." *Feezel*, 486 Mich at 195 (quotation marks and citation omitted).

Here, defendant concedes the issue of factual causation, arguing only that evidence of Ortiz's negligent conduct, an alleged intervening cause, was relevant to the issue of proximate causation and should have been presented to the jury. In *People v Feezel*, our Supreme Court held that in cases of reckless driving causing death, as well as similar offenses containing an element of causation, a victim's gross negligence or intentional misconduct is considered sufficient to break the causal chain between the defendant and the victim and preclude criminal liability. *Feezel*, 486 Mich at 195. However, because it is foreseeable, a victim's ordinary negligence is insufficient to sever proximate causation. *Id.* Gross negligence "is more than an enhanced version of ordinary negligence," and requires "wantonness and disregard of the consequences which may ensue[.]" *Id.* (quotation marks and citation omitted.) "Wantonness is defined as conduct indicating that the actor was aware of the risks but indifferent to the results and usually suggests a greater degree of culpability than recklessness[.]" *Id.* at 196, quoting *Black's Law Dictionary* (8th ed). A victim's BAC may be "highly probative of the issue of gross negligence, and therefore causation, because the victim's intoxication would have affected his ability to perceive the risks posed by his conduct and diminished his capacity to react to the world around him." *Feezel*, 486 Mich at 199. Under *Feezel*, "trial courts must make a threshold determination that there is a jury-submissible question of fact regarding gross negligence before such evidence becomes relevant and admissible" on the issue of causation. *Id.* at 196. "[B]eing intoxicated, by itself, is not conduct amounting to gross negligence." *Id.*

---

[1] Specifically, the statute requires that the defendant *cause* the death of another person while operating a vehicle "in willful or wanton disregard for the safety of persons or property[.]" MCL 257.626(2), (4).

Depending on the facts of a particular case, there may be instances in which a victim's intoxication is not sufficiently probative, such as when the proofs are insufficient to create a question of fact for the jury about whether the victim was conducting himself or herself in a grossly negligent manner. Generally, the mere fact that a victim was intoxicated at the time a defendant committed a crime is not sufficient to render evidence of the victim's intoxication admissible. While intoxication may explain why a person acted in a particular manner, being intoxicated, by itself, is not conduct amounting to gross negligence. [*Id*. at 198-199.]

Accordingly, if a trial court "cannot come to the conclusion that a reasonable juror could view the victim's conduct as demonstrating a wanton disregard of the consequences that may ensue," evidence of the victim's intoxication is not admissible. *Id*. at 202.

Defendant argues that Ortiz's BAC of 0.201 was "highly relevant" to the matter of Ortiz's gross negligence, and that in suppressing evidence of Ortiz's BAC, the trial court misapplied *Feezel*. Defendant is correct that in *Feezel*, our Supreme Court held that evidence of the victim's extreme intoxication was admissible as highly probative. In that case, the defendant was driving his vehicle during early morning hours when he struck and killed a pedestrian who had been walking in the middle of the road with his back to oncoming traffic. *Id*. at 188-189. It was discovered that the defendant's BAC was 0.091 at the time of the accident, and that the defendant had marijuana in his system. The defendant was charged with operating a motor vehicle while intoxicated, MCL 257.625(1), and operating a motor vehicle with the presence of a schedule 1 controlled substance in his body causing death, MCL 257.625(4) and (8). *Id*. at 188. Before the defendant's trial, the trial court granted a motion by the prosecution to preclude evidence of the victim's "extreme intoxication" at the time of the accident. *Id*. at 189. On appeal, our Supreme Court held that the trial court's suppression of evidence of the victim's BAC, which measured 0.268 at the time of the accident, was an abuse of discretion. *Id*. at 198-199. Specifically, the Court stated:

[T]he victim's extreme intoxication was highly probative of the issue of gross negligence, and therefore causation, because the victim's intoxication would have affected his ability to perceive the risks posed by his conduct and diminished his capacity to react to the world around him. Indeed, in this case, the proffered superseding cause was the victim's presence in the middle of the road with his back to traffic at night during a rain storm with a sidewalk nearby. Thus, the proofs were sufficient to create a jury-submissible question about whether the victim was grossly negligent, and the victim's high level of intoxication would have aided the jury in determining whether the victim acted with 'wantonness and a disregard of the consequences which may ensue . . . .' [*Id*. at 199 (footnote and citation omitted).]

This Court clarified the *Feezel* analysis in *People v Bergman*, 312 Mich App 471; 879 NW2d 278 (2015), a case we find highly instructive. In *Bergman*, the defendant was driving a Ford F-350 pickup truck when she crossed the center line, causing a head-on collision with a GMC Sonoma S-10 pickup truck, killing both occupants of the GMC pickup truck. *Id*. at 475. The defendant was convicted of operating a vehicle under the influence of intoxicating liquor or

a controlled substance causing death, MCL 257.625(3) and (4). *Id*. at 474. On appeal, the defendant argued that the trial court had erred "by excluding evidence of intoxicants and controlled substances in the blood stream of . . . the driver of the [GMC pickup truck]," because such evidence was relevant to establishing the driver's negligence. *Id*. at 482. This Court disagreed, concluding that the excluded evidence was not probative of any intervening or superseding cause to break the causal link between the defendant's reckless driving and the deaths of the GMC truck's passengers. *Id*. at 486. The *Bergman* Court drew a distinction between the defendant's case and the circumstances presented in *Feezel*:

> Unlike the pedestrian in *Feezel*, who unnecessarily placed himself in the path of oncoming traffic in conditions of poor visibility, there was no evidence that the victims in this case had placed themselves in a hazardous situation at the time of the collision. The evidence established that [the] defendant's vehicle crossed the centerline and struck the GMC truck head on. There was no evidence that [driver of the GMC truck] was not properly driving within his marked lane, or that [the driver of the GMC truck] would not have safely passed [the] defendant if [the] defendant had not crossed the centerline in front of [him], presenting a serious and unexpected hazard. Thus, there was no evidence that the [driver of the GMC truck] did anything that contributed to the accident in a way that would establish that he was negligent or grossly negligent and by his conduct was an intervening cause of the accident. [*Id*. at 486.]

In this case, unlike in *Bergman*, the excluded evidence was probative of an intervening or superseding cause that would break the causal connection between defendant's conduct and Ortiz's death. Ortiz was not merely intoxicated, he was intoxicated while operating a vehicle in heavy traffic. Defendant testified that the accident occurred when Ortiz drove his vehicle into defendant's lane, causing defendant to compensate and lose control of his own vehicle. Although there is no evidence that Ortiz was driving erratically before the accident occurred, we conclude that defendant's testimony, when coupled with evidence of Ortiz's extreme intoxication, is sufficient to create a jury-submissible question of fact regarding Ortiz's gross negligence such that Ortiz's conduct may have superseded defendant's reckless driving and severed defendant's criminal liability.

The prosecutor argues that Ortiz's purported lane shift could not constitute gross negligence, because shifting lanes where there is a sufficient distance to do so, reasonably assuming that there is not a vehicle in that lane traveling at an excessive rate of speed, does not constitute even ordinary negligence. However, the prosecutor's argument rests on several factual assumptions that must be left to the jurors, as arbiters of fact and witness credibility. See *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013) (acknowledging that it is the jury's duty to determine witness credibility and the weight of evidence). Because failure of proximate causation was defendant's only defense to the charge of reckless driving causing death, it appears more likely than not that the suppression of Ortiz's BAC was outcome determinative. Reversal is therefore appropriate.

Defendant also argues that the trial court abused its discretion by failing to admit evidence of Ortiz's two prior alcohol-related convictions. On this, we disagree.

We review a decision to admit other acts evidence for an abuse of discretion. *People v Dobek*, 274 Mich App 58, 84; 732 NW2d 546 (2007). "[A]lthough evidence of character might very well be relevant to a fact at issue, the rules of evidence strictly limit both the circumstances under which character evidence may be admitted and the types of character evidence that may be admitted." *People v Roper*, 286 Mich App 77, 91; 777 NW2d 483 (2009). Generally, evidence of prior bad acts "is not admissible to prove the character of a person in order to show action in conformity therewith." MRE 404(b)(1). However, evidence of prior bad acts may be admissible to show "motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident." MRE 404(b)(2). To admit evidence under MRE 404(b), the proponent must prove that 'the evidence is logically relevant to a material fact in the case," and not simply relevant to establishing a person's character or a person's propensity to act in conformance with his character. MRE 404(b)(1); *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010). We refer to MRE 404(b) as an "inclusionary" rule, barring evidence only when its sole relevance is to prove a person's character or criminal propensity. *Id*. at 615-616. Evidence relevant for a noncharacter purpose is admissible under 404(b) even when it also reflects on a person's character. *Id*. at 615.

Despite the inclusionary nature of MRE 404(b), we conclude that the rule does not support the admission of defendant's proffered evidence. Defendant has not explained how evidence of Ortiz's prior alcohol related convictions, one from 1993 and the other from 1996, was "logically relevant to a material fact" at issue in his case. In defendant's brief on appeal, defendant argues that "the evidence of [Ortiz's] OWI and OUIL convictions were relevant and admissible. . . to the question of causation and would have bolstered the credibility of [defendant's] testimony that [Ortiz] suddenly pulled into his lane." Causation was certainly a material fact at issue in defendant's case, but, as the trial court properly found, Ortiz's decades-old convictions were simply irrelevant to the question of whether defendant's reckless driving was a proximate cause of Ortiz's death. Evidence of Ortiz's convictions could only corroborate defendant's version of events if the jury assumed that on the day of the accident, Ortiz was acting in conformance with some propensity to drive in an unsafe manner. This is precisely the sort of character inference MRE 404(b) was designed to prevent.

Defendant argues that evidence of Ortiz's prior convictions became relevant for a nonpropensity purpose, i.e., to rebut the prosecutor's character evidence, when the prosecutor elicited testimony regarding Ortiz's safe driving habits from Ortiz's son, John Ortiz, Jr. and "opened the door" for admission of specific act evidence on cross-examination. Presumably, defendant refers to the following exchange, occurring at defendant's trial:

[*The Prosecutor*]: Now, during your time when he was alive, did you ever ride in the car with your dad?

[*Ortiz, Jr.*]: Yes.

*The Prosecutor*: And did he drive some of those times?

*Ortiz, Jr.*: The majority.

\* \* \*

-5-

*The Prosecutor*:  Okay.  And when you would drive with him, describe how he would drive, sir.

*Ortiz, Jr.*:  Like an old man.

*The Prosecutor*:  Say it again?

*Ortiz, Jr.*:  Like an old man.

*The Prosecutor*:  Like an old man.  Okay.  What do you mean when you say like an old man?

*Ortiz, Jr.*:  Ten, two.  Ten, two.  Keep your seatbelt on.  Me, I sit - - I sit back because I'm taller.  But he'd sit straight up.  You know and five miles an hour below the speed limit.

*The Prosecutor*:  And when you say ten, two, you put your hands up like where the clock is ten and two?

*Ortiz, Jr.*:  Yes.

*The Prosecutor*:  Okay.  And is that the manner in which you would consistently drive when you were in the car with him?

*Ortiz, Jr.*:  Yes.

*The Prosecutor*:  During the times you would drive with him in the car, sir, did you ever see him swerving from lane to lane?

*Ortiz, Jr.*:  No.

*The Prosecutor*:  And did he use his blinkers?

*Ortiz, Jr.*:  Yes.

*The Prosecutor*:  Because that's how old men drive, huh?

*Ortiz, Jr.*:  Yeah.

Generally, the jury is entitled to weigh all evidence that might bear on the truth or accuracy of a witness's testimony. *Layher*, 464 Mich at 765.  Evidence affecting the credibility of a witness is therefore relevant. *People v King*, 297 Mich App 465, 477; 824 NW2d 258 (2012).  However, evidence of Ortiz's prior convictions, including his alcohol-related convictions, was not logically relevant here because it did not have any bearing on Ortiz, Jr.'s credibility.  Although the prosecutor elicited Ortiz, Jr.'s testimony regarding his specific experiences with his father's driving, Ortiz, Jr. did not testify that, based on these experiences, he could form an opinion regarding his father's driving on the day of the accident.  Ortiz, Jr. did not testify to any general character or reputation Ortiz maintained for safe driving, or claim that he

knew his father to drive safely even when Ortiz, Jr. was not a passenger. There is simply no logical connection between Ortiz's prior convictions and the credibility of Ortiz, Jr.'s testimony.

The trial court's suppression of Ortiz's convictions was also supported MRE 403, which provides that relevant evidence may be excluded if its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by undue delay, waste of time, or needless presentation of cumulative evidence." The trial court cited no specific rule to support its decision to suppress Ortiz's convictions, explaining only that the convictions were too old to be relevant to the issues presented. However, it is clear that the trial court found the convictions lacking in probative value. Moreover, evidence of Ortiz's prior alcohol-related convictions would have been highly prejudicial. This Court has specifically stated that evidence involving a person's character is "strictly limited because of its highly prejudicial nature [as] there is a significant danger that the jury will overestimate the probative value of character evidence." *Roper*, 286 Mich App at 91. The cumulative nature of the evidence also weighs against admissibility under MRE 403. Despite keeping out the two prior alcohol-related convictions, the trial court allowed the presentation of evidence to show that, at the time of the accident, Ortiz's driver's license was suspended for two moving violations. The trial court also allowed the presentation of specific evidence of the two moving violations—failure to obey a traffic signal and operating a vehicle at 48 miles per hour in a 30 mile per hour zone. The jury was informed that the suspension of Ortiz's driver's license was indefinite, pending the repayment of installment fees. The jury was therefore aware that, despite any attempt by the prosecution to portray Ortiz as a safe and careful driver, Ortiz's record was not unblemished. Evidence of Ortiz's prior alcohol-related convictions was therefore properly excluded under MRE 403.

Finally, defendant argues that the trial court's suppression of all evidence regarding Ortiz's BAC at the time of the accident and Ortiz's history of operating under the influence of alcohol deprived defendant of his constitutional right to present a defense. Given our decision on the issue of admissibility of Ortiz's BAC, it is unnecessary for this Court to reach the constitutional issue presented.

For the stated reasons, we reverse the judgment of sentence, vacate defendant's conviction, and remand the case to the trial court for further proceedings consistent with this opinion. On remand, the trial court is directed to appoint counsel for defendant and reconsider bond pending the new trial.

/s/ Deborah A. Servitto
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens