*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JASON MICHAEL BAASE,

        Defendant-Appellant.

UNPUBLISHED
April 23, 2020

No. 346163
Washtenaw Circuit Court
LC No. 18-000120-FC

Before: CAVANAGH, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

Defendant, Jason Michael Baase, appeals as of right his jury trial convictions of involuntary manslaughter, MCL 750.321; first-degree fleeing and eluding a police officer, MCL 257.602a(5); operating a motor vehicle with license suspended, revoked, or denied causing death (operating without a license causing death), MCL 257.904(4); and operating a motor vehicle while intoxicated (OWI) causing death, MCL 257.625(4)(a). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent sentences of 25 to 50 years' imprisonment for each count. We affirm.

## I. RELEVANT FACTS

This case arises out of a motor vehicle collision that resulted in the death of Dawn Elizabeth Anderson (the victim) on November 20, 2017. Before trial, the prosecution filed a motion in limine to exclude evidence of the victim's THC levels. The prosecutor argued that the victim's THC levels were not probative because they did not demonstrate that the victim was grossly negligent, such that the causal chain between defendant's criminal conduct and the victim's death would be broken. The prosecutor relied on our Supreme Court's holding in *People v Feezel*, 486 Mich 184; 783 NW2d 67 (2010), as it relates to the exclusion of a victim's blood alcohol concentration (BAC). The prosecutor also relied on this Court's holding in *People v Bergman*, 312 Mich App 471; 879 NW2d 278 (2015). Ultimately, the trial court agreed with the prosecution and granted its motion.

During trial, Michigan State Police Motor Carrier Officer Daryl Myers testified that he was working on Interstate 94 (I-94) when he received information of a stolen car in his area. Officer

Myers testified that he was "parked directly next to the scale house [off of I-94] with the nose of [his] vehicle pointing out looking at the freeway" when he received a picture of a black Chrysler 300 driven by defendant. He also testified that, once he received the picture, he looked up from the computer in his patrol car and witnessed defendant drive by.

Officer Myers followed defendant for a few miles down I-94 while trying to arrange backup. When the car exited from the interstate proceeding toward M-52, Officer Myers also exited and activated his patrol lights. The officer testified that he thought defendant was going to stop when defendant pulled off onto the shoulder of the highway. Instead of stopping, however, defendant accelerated outside of the shoulder area and into the center turn lane of M-52. Defendant drove for approximately 30 seconds before colliding with the victim's car in the center turn lane as she exited from a local grocery store, killing her instantly. Analysis of the Chrysler's Event Data Recorder showed that 1.9 seconds before impact, defendant was traveling at 87.61 miles per hour. At 1 second before impact, he was traveling at 90.1 miles per hour. And at 0.3 second before impact, defendant had accelerated to 91.96 miles per hour. The jury acquitted defendant of second-degree murder, but found him guilty of the lesser included offense of manslaughter and the remaining three other charges. This appeal followed.

## II. ANALYSIS

## A. EVIDENTIARY RULING

Defendant first argues that the trial court abused its discretion when it excluded evidence of the victim's THC levels, thus effectively denying defendant his right to present a defense against the charges. We disagree. This Court reviews preserved claims of evidentiary error for an abuse of discretion. See *Bergman*, 312 Mich App at 482. "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. at 483 (quotation marks and citation omitted). When a trial court's decision regarding the admissibility of evidence involves a question of law, this Court's review is de novo. See *People v Layher*, 464 Mich 756, 761; 631 NW2d 281 (2001). Evidentiary issues require reversal when "after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2103) (quotation marks omitted).

"Generally, all relevant evidence is admissible at trial, and evidence which is not relevant is not admissible." *Bergman*, 312 Mich App at 483 (quotation marks, citation, and alterations omitted). "Relevance involves two elements, materiality and probative value. Materiality refers to whether the fact was truly at issue." *Id*. (quotation marks and citation omitted). Probative value refers to whether the evidence "tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence . . . ." *Feezel*, 486 Mich at 197 (quotation marks and citation omitted); MRE 401.

*Feezel* provides guidance to trial courts on whether to admit evidence of intoxicating or controlled substances in a victim's blood. Trial courts "must make a threshold determination that there is a jury-submissible question of fact regarding gross negligence before such evidence becomes relevant and admissible." *Id*. at 196. In *Feezel*, our Supreme Court concluded that evidence of the victim's BAC was relevant to the issue of causation. See *id*. There, the defendant

struck and killed the victim with his car while the victim was walking in the middle of an unlit, five-lane road, with his back to oncoming traffic. See *id*. at 188. The victim was "extremely intoxicated" at the time of the accident with a BAC of 0.268 grams per 100 milliliters of blood. See *id*. at 189. The defendant's BAC was 0.091 to 0.115 grams per 100 milliliters, and marijuana was detected in his blood. See *id*. On appeal, the defendant challenged the trial court's granting of the prosecutor's motion in limine to preclude evidence of the victim's intoxication. See *id*. at 191.

Concluding that the evidence of the victim's intoxication was relevant to the issue of causation, our Supreme Court observed:

> Proximate causation "is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural." If the finder of fact determines that an intervening cause supersedes a defendant's conduct "such that the causal link between the defendant's conduct and the victim's injury was broken," proximate cause is lacking and criminal liability cannot be imposed. Whether an intervening cause supersedes a defendant's conduct is a question of reasonable foreseeability. Ordinary negligence is considered reasonably foreseeable, and it is thus not a superseding cause that would sever proximate causation. In contrast, "gross negligence" or "intentional misconduct" on the part of a victim is considered sufficient to "break the causal chain between the defendant and the victim" because it is not reasonably foreseeable. Gross negligence, however, is more than an enhanced version of ordinary negligence. "It means wantonness and disregard of the consequences which may ensue . . . ." "Wantonness" is defined as "[c]onduct indicating that the actor is aware of the risks but indifferent to the results" and usually "suggests a greater degree of culpability than recklessness . . . ." Therefore, while a victim's negligence is not a defense, it is an important factor to be considered by the trier of fact in determining whether proximate cause has been proved beyond a reasonable doubt. [*Id*. at 195-196 (citations omitted).]

In this case, two of the offenses with which defendant was charged contain an element of causation, thus requiring the prosecutor to prove causation beyond a reasonable doubt for each offense. See *id*. at 193. The statutes for OWI causing death, MCL 257.625(4), and operating without a license causing death, MCL 257.904(4), both require that defendant's operation of a motor vehicle caused the death of another person. Specifically, MCL 257.625 provides in relevant part:

> (1) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated . . . .

\* \* \*

(4) A person, whether licensed or not, who operates a motor vehicle in violation of subsection (1), (3), or (8) and by the operation of that motor vehicle causes the death of another person is guilty of a crime as follows:

(a) Except as provided in subdivisions (b) and (c), the person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not less than $2,500.00 or more than $10,000.00, or both . . . .

Additionally, MCL 257.904 provides in relevant part:

(1) A person whose operator's or chauffeur's license or registration certificate has been suspended or revoked, whose application for license has been denied, or who has never applied for a license, shall not operate a motor vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of motor vehicles, within this state.

\* \* \*

(4) A person who operates a motor vehicle in violation of subsection (1) or a person whose operator's or chauffeur's license or registration certificate has been suspended or revoked by another state who operates a motor vehicle during the period of suspension or revocation and who, by operation of that motor vehicle, causes the death of another person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not less than $2,500.00 or more than $10,000.00, or both . . . .

In *Feezel*, our Supreme Court determined that, because the prosecution was required to prove the element of causation beyond a reasonable doubt, evidence of the victim's BAC was material. See *Feezel*, 486 Mich at 198. In so holding, the Court reasoned that the evidence was "highly probative of the issue of gross negligence, and therefore causation, because the victim's intoxication would have affected his ability to perceive the risks posed by his conduct and diminished his capacity to react to the world around him." See *id*. at 199. However, the Court acknowledged that "being intoxicated, by itself, is not conduct amounting to gross negligence." See *id*. Importantly, the *Feezel* Court noted:

Depending on the facts of a particular case, there may be instances in which a victim's intoxication is not sufficiently probative, *such as when the proofs are insufficient to create a question of fact for the jury about whether the victim was conducting himself or herself in a grossly negligent manner*. [*Id*. at 198-199 (emphasis added).]

In the present case, defendant suggests that the victim's "decision to drive out into traffic" created a question of fact for the jury to determine the reasonableness of that decision. Defendant argues that the victim's THC levels were probative of her gross negligence because it "diminished [her] capacity to react to the world around [her]." See *id*. at 199. However, the trial court determined that there was "no evidence that the victim was driving recklessly or in a grossly negligent manner." It further held that "[t]he toxicology results aren't probative of any intervening

-4-

or superseding cause sufficient to break the causal link between the defendant's alleged actions and the victim's death." Therefore, unlike the victim in *Feezel*, who "unnecessarily placed himself in the path of oncoming traffic in conditions of poor visibility, there was no evidence that the victim[] in this case . . . placed [herself] in a hazardous situation at the time of the collision." See *Bergman*, 312 Mich App at 486. Defense counsel made no offer of proof to "create a question of fact for the jury about whether the victim was conducting . . . herself in a grossly negligent manner." *Feezel*, 486 Mich at 198-199. The trial court properly exercised its discretion when it excluded evidence of the victim's THC levels.

Moreover, contrary to defendant's position, this case is similar to *Bergman*. *Bergman* involved a defendant traveling eastbound when she crossed the centerline of a highway, "veered into the westbound lane, and collided head-on with [the victims]." See *Bergman*, 312 Mich App at 475. The defendant's BAC was below the legal limit, but she also tested positive for several other drugs. See *id*. The defendant sought to introduce evidence of the victims' BAC and THC levels, but the trial court granted the prosecution's motion to exclude such evidence. On appeal, the defendant challenged the trial court's exclusion of the evidence of intoxicants and controlled substances in the victims' bloodstream on the basis that such evidence was relevant to causation. *Id*. at 482. After applying *Feezel*, this Court concluded that the victims' BAC and THC levels were "not probative of an intervening or superseding cause that could break the causal link between defendant's conduct and the victims' deaths." See *id*. at 485-486. The Court reasoned:

> [T]here was no evidence that the victims in this case had placed themselves in a hazardous situation at the time of the collision. The evidence established that defendant's vehicle crossed the centerline and struck the [victims' car] head-on. There was no evidence that [the driver] was not properly driving within his marked lane, or that [the driver]'s vehicle would not have safely passed defendant if defendant had not crossed the centerline in front of [the driver], presenting a serious and unexpected hazard. Thus, there was no evidence that [the driver] did anything that contributed to the accident in a way that would establish that he was negligent or grossly negligent and by his conduct was an intervening cause of the accident. . . . [A] driver's failure to avoid a vehicle that suddenly crosses the median directly in the path of oncoming traffic does not constitute gross negligence breaking the causal link. *An accident victim's inability to protect himself and others from the consequences of another person's unexpected introduction of a serious hazard does not constitute an intervening cause severing the causal chain between the defendant and the victim.* [*Id*. at 486 (emphasis added).]

Applying the same rationale to the facts of this case yields the same conclusion. The evidence established that defendant drove in the center turn lane of a two-lane highway at speeds upward of 90 miles per hour. The evidence further established that defendant struck the victim's driver-side door while traveling at approximately 91 miles per hour, killing her instantly. The evidence did not, however, establish that the victim was driving improperly. Moreover, there was no evidence that the victim's vehicle would not have safely passed the northbound and center turn lanes if defendant had not been speeding down the center turn lane "presenting a serious and unexpected hazard." See *id*. Although defendant speculates that the victim's THC levels impaired her ability to react and avoid the accident, there was no evidence that the victim contributed to the collision in a way that would establish that she was even negligent, let alone grossly negligent.

Accordingly, because the proofs were insufficient to create a question of fact as to whether the victim was grossly negligent, we conclude that the trial court did not abuse its discretion when it excluded evidence of the victim's THC levels.

## B. SENTENCING

Defendant also argues that the trial court abused its discretion by sentencing defendant outside of the sentencing-guidelines range. We review for reasonableness the trial court's decision to issue a sentence outside the sentencing-guidelines range. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *Id*.

The sentencing guidelines are advisory. *People v Lockridge*, 498 Mich 358, 365, 392; 870 NW2d 502 (2015). Nevertheless, trial courts are still required to properly score the sentencing guidelines and must take them into account when determining an appropriate sentence. See *id*. at 392. The key test, however, "is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Steanhouse*, 500 Mich at 475 (quotation marks and citation omitted). If the trial court chooses to deviate from the sentencing guidelines, it must justify the deviation on the record by explaining "why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017). Relevant factors for determining whether an upward departure sentence from the guidelines minimum range is more proportionate than a sentence within the guidelines range "include (1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight." See *id*.

Defendant's Presentence Investigation Report (PSIR) recommended a minimum sentence between 62 to 228 months of imprisonment; as noted previously, the trial court sentenced defendant to a minimum sentence of 25 years, six years above the recommended minimum. Although an upward departure from the guidelines range, we cannot conclude that the deviation was without justification.

Defendant's PSIR revealed that, starting when he was a juvenile, defendant had committed eight felonies and 11 misdemeanors. Notably, seven of defendant's prior offenses involved stealing a motor vehicle. The trial court concluded that the sentencing-guidelines range did not accurately reflect this history and warranted a higher sentence. We agree. Offense Variable (OV) Levels account for an offender's total OV score. MCL 777.64. OV Level VI accounts for a minimum of 75 points. Defendant had 130 total OV points assessed against him, which was 55 points higher than was necessary to place defendant at the highest OV level. Furthermore, defendant's lack of capacity to reform was also evidenced by the fact that the current offense involved a stolen vehicle, an offense of which defendant had been found guilty on seven prior occasions. Given the court's rationale that the guidelines do not adequately account for defendant's demonstrated inability or disinclination to conform his conduct to the legal norm and the severity of the current offense, we conclude that the trial court did not abuse its discretion by imposing an upward departure sentence because the sentence was proportionate to the offender and the offense. See *Dixon-Bey*, 321 Mich App at 525.

We also reject defendant's contention that the trial court relied on acquitted conduct when it imposed this out-of-guidelines sentence. Under our Supreme Court's recent holding in *People v Beck*, 504 Mich 605, 629; 939 NW2d 213 (2019), "reliance on acquitted conduct at sentencing is barred by the Fourteenth Amendment." *Beck* involved a defendant who was convicted by a jury of being a felon in possession of a firearm and carrying a firearm during the commission of a felony (felony-firearm), but acquitted of numerous other crimes, such as open murder, carrying a firearm with unlawful intent, and two additional counts of felony-firearm. *Id*. at 610. Nonetheless, the trial court in *Beck* determined, by a preponderance of the evidence, that the defendant committed the murder and considered that fact when it fashioned a sentence over the guidelines range at sentencing. *Id*. at 611-612. On appeal, our Supreme Court ruled that the trial court's consideration of acquitted conduct violated the defendant's due-process rights and remanded for resentencing. *Id*. at 629-630.

In the present case, the trial court did not determine that defendant was guilty of second-degree murder, the offense of which the jury acquitted defendant. Defendant suggests that the trial court's statement, "you created a very high risk of death and/or great bodily injury," reflects that the trial court found defendant guilty of second-degree murder and imposed the upward departure sentence on that basis. Taken out of context, the court's statement might lend support to defendant's argument. However, read in the context of the trial court's review of defendant's PSIR and complete rationale, the statement is better understood as expressing the trial court's assessment of defendant's criminal history and how it should have informed his decision-making and the risks he was creating at the time of the offense. The record is devoid of any fact suggesting that the trial court found by a preponderance of the evidence that defendant was guilty of second-degree murder and then imposed an upward departure sentence on the basis of that finding. Instead, the record more accurately reveals that the trial court imposed the upward departure sentence on the basis of defendant's "inability to conform" his behavior and because the severity of defendant's conduct resulted in a total OV score nearly 175% above the minimum score required for OV Level VI.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher