*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KYLAND ANDREW HUDSON,

        Defendant-Appellant.

UNPUBLISHED
August 29, 2019

No. 342001
Calhoun Circuit Court
LC No. 2017-001326-FC

Before: STEPHENS, P.J., and GLEICHER and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions and sentences, following a jury trial, for first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(c); production of child sexually abusive material, MCL 750.145c(2); and second-degree child abuse, MCL 750.136b(3). The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10(1)(a), to 30 to 60 years' imprisonment for the CSC-I conviction, 118 to 360 months' imprisonment for the production of child sexually abusive material conviction, and 107 to 180 months' imprisonment for the second-degree child abuse conviction. We affirm defendant's convictions but vacate his departure sentences and remand for resentencing.

## I. BACKGROUND

Five videos were discovered on defendant's cellular telephone. The videos depicted the sexual assault of defendant's step-daughter, JK, while she was unconscious. They showed a hand touching and digitally penetrating JK. JK was a minor at the time.

JK testified at trial that during August and September of 2015 she had assisted defendant in working on his camper (in which defendant was living while separated from his then-wife). She further testified that defendant provided her with prescription medication on multiple occasions, giving her two or three pills that he retrieved from a bag in his truck, while saying something like "Here, this is for your headache." According to JK, she and defendant worked late into the night and she would spend the night at the camper.

-1-

At trial, JK's mother (by then defendant's ex-wife), testified that she recognized defendant's hand in the videos; she described his hands as being large with long fingers and a long thumbnail. Defendant attempted to refute that identification by testifying that he always chewed his nails and never had long fingernails, including the thumbnail. Defendant also called several friends and family members as witnesses; they similarly testified that defendant always had short fingernails because he chewed them.

After the defense rested on the third day of trial, the prosecution recalled defendant's ex-wife as a rebuttal witness and sought to show her a proposed exhibit. A recess was taken and the jury was excused so that trial counsel and the trial court could confer about the proposed exhibit. The proposed exhibit was comprised of digital photographs depicting defendant with thumbnails that stretched beyond the tips of his thumbs and a pinky nail that stretched beyond the tip of his pinky finger. The prosecution asserted that these photographs were "just received today in rebuttal evidence" from defendant's ex-wife. The trial court ordered the prosecution to provide defense counsel with the "raw images" of the digital photographs so that he could assess whether they had been edited, and allowed the admission of the photographs as rebuttal evidence. The prosecution began its direct examination of defendant's ex-wife that day; defense counsel's cross-examination took place the following day. Defendant's ex-wife testified that she took the photographs in 2009 and 2010 and did not edit them.

Also at trial, video of defendant's interview with Detective Bryan Gandy of the Calhoun County Sheriff's Department was played for the jury. During the interview, defendant asked Detective Gandy several times whether Gandy was sure that the hand depicted in the video belonged to him; Gandy replied, "Yeah," "I'm pretty positive it was you," and "They're your hands." Detective Gandy also told defendant that he had "no doubt that it's you in the video." Defendant admitted during the interview that JK had spent the night at his camper more than once during the relevant time period, that he had given JK some of his prescription anti-anxiety medication on occasion, and that he had a prescription for sleeping pills.

The jury convicted defendant as described. At sentencing, the trial court calculated defendant's recommended minimum sentence range for the CSC-I conviction under the sentencing guidelines as 135 to 281 months. It then imposed a minimum sentence of 360 months, which was 79 months above the upper end of the guidelines range.

This appeal followed. After filing his claim of appeal, defendant moved in this Court for a remand to the trial court for purposes of a *Ginther*[1] hearing regarding the effectiveness of his trial counsel in failing to object to the admission of his interrogation video.

II. ADMISSION OF REBUTTAL EVIDENCE

Defendant argues that the trial court abused its discretion by admitting improper rebuttal evidence. Generally, we review evidentiary issues for an abuse of discretion. *People v Benton*, 294 Mich App 191, 199; 817 NW2d 599 (2011). We also review for an abuse of discretion a

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

trial court's determination whether a discovery violation occurred. See MCR 6.201(J); *People v Jackson*, 292 Mich App 583, 591; 808 NW2d 541 (2011).

"Rebuttal evidence is admissible to contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same." *People v Figgures*, 451 Mich 390, 399; 547 NW2d 673 (1996) (quotation marks and citation omitted). Generally speaking, "nothing that tends to prove the commission of the crime itself or its immediate surroundings can be classed as rebutting evidence under ordinary circumstances, if at all." *People v Vasher*, 449 Mich 494, 504-05; 537 NW2d 168, 173 (1995). The purpose of this general rule is to "prevent [the prosecution from] 'sandbagging' the defendant by introducing new, substantive evidence on rebuttal that should have been introduced in its case in chief." *Id*. at 505. Regarding whether evidence constitutes properly-admitted rebuttal evidence, our Supreme Court has stated:

> The question whether rebuttal is proper depends on what proofs the defendant introduced and not on merely what the defendant testified about on cross-examination.
>
> . . . [T]he test of whether rebuttal evidence was properly admitted is not whether the evidence could have been offered in the prosecutor's case in chief, but, rather, whether the evidence is properly responsive to evidence introduced or a theory developed by the defendant. As long as evidence is responsive to material presented by the defense, it is properly classified as rebuttal, even if it overlaps evidence admitted in the prosecutor's case in chief. [*Id*. (citations omitted).]

Further, rebuttal evidence is proper when it serves as a "simple contradiction" of the defendant's testimony on the same subject. *Vasher*, 449 Mich at 505. The prosecution may not elicit testimony on a collateral matter with the goal of using it as a "spring board" for introducing substantive evidence as rebuttal evidence. *Id*. However, rebuttal evidence that focuses on a matter that is "material and relevant" is allowable to rebut a denial of the same by defendant. *Id*. A witness's credibility is almost always relevant. See *People v Layher*, 464 Mich 756, 765; 631 NW2d 281 (2001).

The prosecution introduced the photographs of defendant's hands after defendant repeatedly denied that he ever had long fingernails, and after defense witnesses corroborating his testimony. The photographs of defendant's hands were offered into evidence specifically and solely to refute defense testimony in support of defendant's theory that his habitually short fingernails demonstrated that the hand in the videos was not his. *Figgures*, 451 Mich at 399. As the trial court noted, the issue was germane to the question of guilt or innocence because it related to defendant's and other defense witnesses' credibility. *Layher*, 464 Mich at 765. The photographs were properly admitted to discredit the testimonies of defense witnesses regarding the length of defendant's fingernails. *Vasher*, 449 Mich at 505. Therefore, the trial court did not abuse its discretion by admitting the photographs as rebuttal evidence regarding the length of defendant's fingernails. *Benton*, 294 Mich App at 199.

Defendant also argues that the admission of the photographs was an abuse of the trial court's discretion because the prosecution had violated discovery rules by failing to disclose them earlier. MCR 6.201(A)(6) makes it mandatory, upon request, for a party to provide the other party with "a description of and an opportunity to inspect any tangible physical evidence that the party may introduce at trial."

> If a party fails to comply with this rule, the court, in its discretion, may order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances. [MCR 6.201(J).]

"When determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002).

The trial court did not abuse its discretion by admitting the photographs. *Jackson*, 292 Mich App at 591. Although MCR 6.201(A)(6) compels the prosecution to comply with a defendant's discovery request by providing a description of the evidence it intends to use at trial, it cannot do so when the evidence is discovered *during* trial. As the trial court noted, defendant's ex-wife provided the photographs to the prosecution on the morning of the third day of trial. Therefore, defendant has failed to prove that the prosecution violated the discovery rules by not disclosing the photographs earlier.

Additionally, trial courts have the discretion to fashion an appropriate remedy for a discovery violation. *People v Rose*, 289 Mich App 499, 525; 808 NW2d 301, 319 (2010). The exercise of that discretion requires inquiry into all the relevant circumstances, including "the causes and bona fides of tardy, or total, noncompliance, and a showing by the objecting party of actual prejudice." *Id*. at 525-526. The trial court required the prosecution to provide defendant with the raw images that day to enable defendant to evaluate whether they could have been altered. Defense counsel was permitted to continue cross-examining defendant's ex-wife the following day, after having had time to review the photographs more thoroughly. Therefore, defendant has failed to demonstrate that the trial court abused its discretion in fashioning an appropriate remedy for the alleged discovery violation. *Rose*, 289 Mich App at 525.

Even if we were to determine that the prosecution violated the discovery rules, defendant bears the burden of establishing that it resulted in actual prejudice. *Id*. at 526. We presume that an evidentiary error is not a "ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative." *People v Krueger*, 466 Mich 50, 54; 643 NW2d 223 (2002). An evidentiary error is "outcome determinative" if it undermines the reliability of the verdict. *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000). In reviewing the error's effect on the verdict, we "focus on the nature of the error in light of the weight and strength of the untainted evidence." *Id*.

The alleged error did not affect the reliability of the verdict. Strong circumstantial evidence established that defendant was the only person with access to the phone on which the videos were found. In addition, his ex-wife testified that the hands depicted in the videos belonged to defendant. JK had no memory of the incident, but recounted that she and defendant were alone in the camper at around the time the video files were dated. Defendant has not established that the alleged error was outcome determinative. *Elston*, 462 Mich at 766.[2]

### III. ADMISSION OF INTERVIEW VIDEO

Defendant also argues that the trial court improperly admitted the interview video because it contained Detective Gandy's comments regarding defendant's credibility. Credibility was critical to the outcome of this case, defendant insists, and Detective Gandy's comments that he "knew" and had "no doubt" that it was defendant's hand unfairly prejudiced the jury. Alternatively, defendant argues that his counsel was ineffective for failing to object to the video's admission.

Again, we generally review evidentiary issues for an abuse of discretion. *Benton*, 294 Mich App at 199. However, we review unpreserved claims for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under the plain error rule, a defendant must establish that error occurred, the error was clear and obvious, and it affected his substantial rights. *Id*. Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of guilt or innocence. *Id*.

The determination of whether a defendant received effective assistance of counsel "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "This Court reviews findings of fact for clear error and questions of law de novo." *Heft*, 299 Mich App at 80. However, when a motion for an evidentiary hearing is denied, our review is limited to errors apparent on the trial record. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

A witness may not vouch for another person's credibility because credibility determinations are reserved for the jury. *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). Here, defendant argues that Detective Gandy's statements were impermissible attacks on his credibility and similarly inadmissible under *Dobek*. We find no merit in this argument.

The challenged statements by Detective Gandy do not explicitly attack defendant's credibility, accuse defendant of lying, or indicate that Gandy believed JK. Rather, they were

---

[2] We note additionally that the photographs were family photographs that defendant presumably knew existed and were in his ex-wife's possession. Accordingly, even assuming a discovery violation, defendant had actual notice of the photographs and could have prepared his defense accordingly. See *People v Taylor*, 159 Mich App 468, 488; 406 NW2d 859, 869 (1987) (stating that the defendant was not entitled to a remedy for the discovery violation because he knew about the letter, having written it, and so his knowledge was not dependent on discovery).

statements of Detective Gandy's opinion, formed from visual observation, that defendant's hands were the hands in the video.[3] Detective Gandy's statements were not comments on defendant's credibility. *Dobek*, 274 Mich App at 71.

Moreover, a detective's non-hearsay statements during an interview may be admissible to provide context for a defendant's responses. *People v Musser*, 494 Mich 337, 355; 835 NW2d 319 (2013).[4] Our Supreme Court also has declined to hold that all out-of-court statements that comment upon a person's credibility must automatically be excluded from evidence. *Id*. at 339-340. Rather, if an out-of-court statement is relevant, the trial court must still consider whether the danger of unfair prejudice outweighs the statement's probative value. *Id*. at 356. Our Supreme Court has cautioned that "an out-of-court statement made by an investigating officer may be given undue weight by the jury where the determination of a defendant's guilt or innocence hinges on who the jury determines is more credible—the complainant or the defendant." *Id*. at 358 (quotation marks and citation omitted). Further, if "an interrogator's out-of-court statement is determined to be admissible for the purpose of providing context for a defendant's statements" but is not admissible for any other purpose, the court must provide a limiting instruction when requested. *Id*. at 358; MRE 105.

Here, Detective Gandy's statements provided context to the repeated denials that defendant provided, to enable the jury to determine what was being discussed and what defendant was denying, and they also help to explain why Detective Gandy proceeded as he did during the interview and investigation. Detective Gandy's statements were also provided through his direct testimony at trial through testimony that he had formed the opinion that the hands on the video belonged to defendant based on a comparison of the video and his observation of defendant's hands. And because he acknowledged on cross-examination that he had been informed that defendant's ex-wife had identified the hands on the videos as defendant's, the jury was aware that Detective Gandy's statements may have been colored by his prior knowledge of that identification. We cannot conclude under these circumstances that the challenged statements were admitted in error, or that, even if admitted erroneously, that they were outcome determinative. See *Carines*, 460 Mich at 763. Further, as noted, defense counsel could have requested a limiting instruction regarding Detective Gandy's statements, but did not. *Musser*, 494 Mich at 358. The jury was instructed, however, that it was to judge the credibility of police witnesses as it would any other witness. We conclude that no plain error occurred in the admission of the interview video.

Additionally, defense counsel was not ineffective for failing to object to the admission of the interview video. In order to find merit in a defendant's claim of ineffective assistance of

---

[3] Opinions of lay witnesses are generally admissible if they are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." MRE 701.

[4] This is true unless the interrogator's statements are "offered to provide context to a defendant's statement that is not 'in issue,' " in which case neither the interrogator's nor the defendant's statements are material or relevant. *Musser*, 494 Mich at 355.

counsel, the defendant must prove: (1) that the attorney made an error, and (2) that the error was prejudicial to defendant. See *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 311, 314; 521 NW2d 797 (1994). That is, the defendant must first show that defense counsel's performance fell below an objective standard of reasonableness. See *People v Russell*, 297 Mich App 707, 715-716; 825 NW2d 623 (2012). The Court must analyze the issue with a strong presumption that defense counsel's conduct falls within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action or inaction might be considered sound trial strategy. See *Leblanc*, 465 Mich at 578. Second, the defendant must show that, but for defense counsel's deficient performance, a different result would have been reasonably probable. See *Russell*, 297 Mich App at 715-716. However, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant failed to establish that the interview video was inadmissible because of the detective's comments. Although we reviewed its admission for plain error because defendant did not object to it, our analysis would not have differed if we had reviewed the issue of the video's admission as a preserved error. *Benton*, 294 Mich App at 199. Defense counsel was not required to make a futile objection. *Ericksen*, 288 Mich App at 201. Additionally, defendant has failed to show that, but for the admission of Detective Gandy's statements, a different result would have been probable. *Russell*, 297 Mich App at 715-716. The testimony of defendant's ex-wife, JK, and defendant himself, was sufficient for the jury to convict defendant. The photographs of defendant's hands showing that he had a long thumbnail and pinky nail merely served to discredit defendant's argument that it was not his hand that was depicted in the video. Also, as noted, defense counsel elicited testimony from Detective Gandy that supported the inference that his opinion may have been influenced by defendant's ex-wife's identification. We conclude that defense counsel was not ineffective.

## IV. DEPARTURE SENTENCE

Defendant contends that his departure sentence is disproportionate and unreasonable. We review departure sentences for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). When assessing reasonableness, we consider whether the trial court abused its discretion by violating the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990).

To implement the principle of proportionality, a sentencing court must evaluate "where, on the continuum from the least to the most serious situations, an individual case falls and . . . sentenc[e] the offender in accordance with that determination." *Id*. at 654. The statutory guidelines are "a useful tool" in selecting a proportionate sentence, as they "embody the principle of proportionality." *People v Dixon-Bey*, 321 Mich App 490, 524; 909 NW2d 458 (2017). Nevertheless, a departure sentence may be "more proportionate" based on considerations including "(1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines, but given inadequate weight." *Id*. at 525 (citations omitted).

When a trial court elects to impose a departure sentence, it must "justify the sentence imposed to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Id*. (quotation marks and citations omitted). "A sentence cannot be upheld when the connection between the reasons given for the departure and the extent of the departure is unclear." *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008). In other words, a sentencing court validates a departure sentence by explaining why the sentence it selected better fits the crime and the offender than would a sentence within the guidelines. If an appellate court determines that the "trial court has abused its discretion in applying the principle of proportionality by failing to provide adequate reasons for the extent of the departure sentence imposed, it must remand to the trial court for resentencing." *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017) (*Steanhouse II*).

In *Dixon-Bey*, 321 Mich App at 526-527, 529, this Court identified several signals of potential disproportionality, including a sentence based on factors already accounted for in the guidelines. Additionally, *Dixon-Bey* stressed that if the reasons for a particular departure are unclear, an appellate court is not empowered to fill in the gaps by substituting its own proportionality judgment. *Id*. at 529.

Defendant's OV score was 100, representing 10 points under OV 4 (serious psychological injury requiring professional treatment occurred to a victim), 15 points under OV 10 (predatory conduct was involved), 50 points under OV 11 (two or more sexual penetrations occurred), and 25 points under OV 13 (continuing pattern of criminal behavior). As a second habitual offender, defendant's guideline range for his CSC-I conviction was 135 to 281 months' imprisonment. The trial court imposed a minimum sentence of 360 months, adding 6½ years to the applicable guideline minimum. The court justified this sentence as follows:

> As you are aware, I had the opportunity to sit through this trial and as I indicated in part of my ruling on the presentence report it was a difficult trial to sit through. One, just the nature of the evidence that was shown in the video—in the videos that were presented to the jury and I know the jury had difficulty in watching them as well. They were videos of your creation. The predatory nature of your behavior in this case is—is just something that I can't get over. To be a father figure to somebody for ten years and to bring about—and one could argue that for at least an extended period of that you were grooming this child to get her to that position where you could take advantage of her. You then medicated her to the point where she was unconscious so that you could perform these acts and commit these crimes. Just unconscionable. It's just it's sick, predatory, it's just there aren't really words to describe the depravity of your behavior. It really is just it's beyond comprehension. And I think in the communities that we live in and in society in general in the United States you are seen as a monster really. I think that's the term that most people would put on you that you're a monster and their children should be afraid of you and I don't disagree.
>
> The question then is how long to put you in prison. And you don't have much of a criminal history other than some misdemeanor convictions but that's not all that uncommon. The question is what's appropriate on your end, what's

appropriate for society, what's appropriate as far as deterrence and I do my best based upon my experience in the law to give that to you.

The court expressed three reasons for departing: defendant had engaged in predatory conduct, the victim thought of him as a father-figure, and defendant drugged the victim before assaulting her. All are legitimate reasons to consider a departure sentence. However, the trial court neglected to explain on the record its rationale for departing by 79 months, and failed to reference the guidelines when it did so.

The trial court did not explain how or why the guidelines inadequately accounted for defendant's conduct. Defendant received the highest number of points possible for his predatory conduct and for psychological injury resulting from his betrayal of the victim's trust. The trial court relied on defendant's predatory behavior in selecting a sentence above the guidelines, but did not explain why or how OV 10 failed to adequately take that behavior into account. The trial court did not express that OV 10 or OV 4 were given inadequate weight, and did not explain how the selected sentence was more proportionate than a sentence falling within the minimum sentencing guidelines range would have been.

The minimum sentence imposed by the trial court exceeded the top of the guidelines range by 79 months—a substantial departure. Given the circumstances, a departure to this extent may be warranted. But this is not a determination that is ours to make. And without further explanation of how or why the trial court selected this number, we cannot determine whether the court abused its discretion in finding the sentence it imposed proportionate to the offense and the offender.

We affirm defendant's convictions but vacate his sentences and remand for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Elizabeth L. Gleicher

-9-