*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DANIEL JOSEPH YUHASEY,

        Defendant-Appellant.

UNPUBLISHED
December 16, 2021

Nos. 353144; 353145
Dickinson Circuit Court
LC Nos. 19-005728-FH;
           19-005729-FC

Before: K. F. KELLY, P.J., and JANSEN and RICK, JJ.

PER CURIAM.

A jury found defendant guilty of delivery of a controlled substance, MCL 333.7401(2)(b)(*i*) (methamphetamine), and delivery of an imitation controlled substance, MCL 333.7341(3). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 7 to 30 years in prison for delivery of methamphetamine, and 2 to 15 years in prison for delivery of an imitation controlled substance. Defendant appeals by right. We affirm.

## I. BACKGROUND

This case involves two controlled methamphetamine buys between a confidential informant and defendant; the first occurred on October 23, 2018, and the second occurred on November 9, 2018. For the second controlled buy in November, laboratory tests confirmed that the substance, which in appearance looked like methamphetamine, was not a controlled substance. The confidential informant involved in these buys was Andrew Dubovsky. Both buys involved Dubovsky driving to a particular residence and obtaining the substances from defendant. Prior to the buys, police officers with the "K.I.N.D. drug enforcement team" (the KIND Team) met with Dubovsky, searched him and his vehicle, and maintained constant surveillance during the buys.

During the October buy, Dubovsky purchased one-half gram of methamphetamine from defendant for $120. During the November buy, Dubovsky purchased one-half gram of what he believed to be methamphetamine from defendant for $100. The officers testified at trial as to their observations and actions for the two controlled buys. Although there were no photographs, video, or audio from the controlled buys, the officers explained that this was standard practice to protect the confidentiality of their informants. Some of the officers gave background information on the

-1-

KIND Team, including how it selected its informants, why it chose to work with informants, and why it chose to work with Dubovsky. Dubovsky had worked with the KIND Team in the past, and had drug possession charges dismissed as a result of his informant work. He had shown himself to be a reliable informant.

Before trial, the prosecutor moved to admit evidence of defendant's prior second-degree home invasion conviction from 2013. The prosecution also moved to exclude two pieces of evidence related to Dubovsky: a prior perjury charge from 2017 in an unrelated case that was subsequently dismissed, and an ongoing investigation for larceny of a motor vehicle in which Dubovsky's name was mentioned by a potential witness. The trial court granted the prosecution's motion to admit evidence of defendant's prior conviction and its motion to exclude evidence of the larceny investigation. The court additionally ruled that defendant could ask Dubovsky on cross-examination whether he had been charged with perjury in 2017, but could not introduce extrinsic evidence as part of this inquiry.

## II. ANALYSIS

### A. EVIDENTIARY ISSUES

Defendant argues that he should have been permitted to make further inquiries and introduce extrinsic evidence of Dubovsky's perjury charge, and that evidence of the larceny investigation involving Dubovsky should have been admitted. Additionally, defendant contends that evidence of his prior second-degree home invasion conviction should have been excluded. We disagree.

A trial court's decision to admit or preclude evidence is reviewed for an abuse of discretion. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). A court abuses its discretion when its decision is "outside the range of principled outcomes." *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013). But when "the decision involves a preliminary question of law, which is whether a rule of evidence precludes admissibility, the question is reviewed de novo." *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). Questions of constitutional law are reviewed de novo. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

"Waiver has been defined as the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted). Although defendant's trial counsel argued in his written response that he should be permitted to cross-examine Dubovsky on the perjury charge, he agreed with the trial court that he would only question Dubovsky about whether he had been charged with perjury, and would not go into specifics. Defendant contends on appeal that the trial court should have allowed more expansive cross-examination, but neither defendant nor his trial counsel asked for this. "A defendant may not waive objection to an issue before the trial court and then raise it as an error before this Court. To hold otherwise would allow defendant to harbor error as an appellate parachute." *People v Fetterley*, 229 Mich App 511, 520; 583 NW2d 199 (1998) (citation omitted). Defendant waived this issue by explicitly agreeing with the trial court that Dubovsky would only be asked if he was previously charged with perjury.

-2-

Likewise, regarding defendant's prior conviction, at the motion hearing trial counsel "concede[d] [that defendant] has that prior felony conviction" and that "[i]t does, I believe, fit within the . . . court rules." Trial counsel stated that the trial court would need "to determine . . . how close in time. It's a 2013 conviction. I'd ask the Court to . . . keep that out; however, I'll leave that to the Court's discretion—and obviously would only come in if Mr. Yuhasey makes a decision to testify or put his character into evidence." Therefore, trial counsel conceded that it was within the court rules and left it to the trial court's discretion. Defendant also waived this issue. See *Fetterley*, 229 Mich App at 520.

Regardless, we are convinced that, on the merits, defendant is not entitled to relief. A defendant has the right to be confronted with the witnesses against him. US Const, Am VI; Const 1963, art 1, § 20; *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007). One of the rights secured by this is the right to cross-examination. *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). However, this right "is not without limit; neither the Confrontation Clause nor due process confers an unlimited right to admit all relevant evidence or cross-examine on any subject." *Id*. In fact, "[t]he right of cross-examination does not include a right to cross-examine on irrelevant issues and may bow to accommodate other legitimate interests of the trial process or of society," and the trial court is given "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id*. (quotation marks and citation omitted). A defendant is nonetheless "guaranteed a *reasonable opportunity* to test the truth of a witness' testimony." *Id*. (emphasis added).

There is no dispute that Dubovsky was never convicted of perjury. Therefore, MRE 609(a) is inapplicable. On the other hand, MRE 608(a) allows for a witness's credibility to "be attacked or supported by evidence in the form of opinion or reputation . . . ." MRE 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, *may not be proved by extrinsic evidence*. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, *be inquired into on cross-examination of the witness* (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. [Emphasis added.]

In *People v Falkner*, 389 Mich 682, 695; 209 NW2d 193 (1973), our Supreme Court held "that in the examination or cross-examination of any witness, no inquiry may be made regarding prior arrests or charges against such witness which did not result in conviction; neither may such witness be examined with reference to higher original charges which have not resulted in conviction, whether by plea or trial."

However, our Supreme Court subsequently limited its broad holding in *Falkner*:

> *Falkner* speaks generally about the impeachment and discrediting of witnesses by use of prior arrests. However, as we have observed above, *Falkner*

did not address the well-established authority holding that cross-examination of a witness regarding bias is "always relevant." Because *Falkner*'s holding did not exclude impeachment regarding a witness' bias, we conclude that an express limitation of *Falkner* is warranted and reasonable.

* * *

We therefore hold that evidence of bias arising from past arrest without conviction is admissible if relevant, as long as its probative value is not substantially outweighed by the danger of unfair prejudice. MRE 403. Because prejudicial inferences may also be drawn from evidence of past arrests, "we instruct the bench and bar to employ the evidentiary safeguards already present" in the Michigan Rules of Evidence in determining the admissibility of a past arrest that did not result in conviction. [*People v Layher*, 464 Mich 756, 767, 768-769; 631 NW2d 281 (2001) (citations omitted).]

The defendant in *Layher* was accused of criminal sexual conduct against his minor niece. *Id*. at 758. A defense witness in *Layher*, Robert Ganger, had engaged in several conversations with the victim and the victim's aunt after the alleged criminal sexual conduct had occurred. *Id*. at 760. Ganger's testimony conflicted with that of the victim, and "the prosecution sought to introduce the fact that Mr. Ganger had been tried and acquitted on the charge of criminal sexual conduct involving a child under the age of thirteen." *Id*. According to the prosecution, this was done to show bias. *Id*. The prosecution stated, "I certainly think that that shows bias that he's going to try to assist another person who has been charged with the same thing he's been charged with, and obviously I would believe he would think wrongly accused of." *Id*.

MRE 608(b) prohibits specific instances to be proven by extrinsic evidence. Although these specific instances may be inquired into on cross-examination, we agree with the trial court's conclusion that the questioner must take the witness at his or her answer. Although *Layher* allows for prior arrests to be used to show bias, we note that defendant raises no argument that Dubovsky was biased; rather, defendant contends that this evidence was admissible for purposes of generally attacking Dubovsky's credibility.

Trial courts are given "wide latitude insofar as the Confrontation Clause is concerned to impose *reasonable limits on such cross-examination* based on concerns about, among other things, harassment, prejudice, *confusion of the issues*, the witness' safety, or interrogation that is *repetitive or only marginally relevant*." *Adamski*, 198 Mich App at 138 (emphasis added). Defendant was not deprived of the opportunity to cross-examine Dubovsky about his prior perjury charge, and he was afforded a "*reasonable* opportunity to test the truth of [Dubovsky's] testimony." *Id*. (emphasis added).

Regarding defendant's prior conviction of home invasion, MRE 609(a) provides:

For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and

-4-

(1) the crime contained an element of dishonesty or false statement, or

(2) the crime contained an element of theft, and

(A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and

(B) the court determines that the evidence has *significant probative value* on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.

It is undisputed that defendant was convicted of second-degree home invasion. MCL 750.110a(3) provides:

A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the second degree.

Defendant contends that the prosecutor failed to show that his second-degree home invasion conviction arose from a prosecutorial theory containing an element of theft (i.e., larceny). However, his presentence investigation report (PSIR) shows that he was charged with two counts of second-degree home invasion and one charge of receiving and concealing stolen property. The presence of stolen property makes it probable that this prior conviction involved larceny versus the other variations such as assault.

Regardless, to the extent there was any error, such error was harmless. See MCL 769.26. The prior conviction was not belabored at trial; defendant was asked if he had a prior conviction of home invasion, and he acknowledged it. Other than this single question, no other attention was drawn to it. There was extensive evidence arrayed against defendant. The KIND Team officers described the searches before, during, and after the buy; explained that the vehicle and Dubovsky were constantly under surveillance; explained that defendant was the only person to enter the vehicle and interact with Dubovsky; and explained that methamphetamine and the imitation methamphetamine were found on Dubovsky. During an interview after his arrest, defendant admitted that he had been selling drugs during the period of time in which the controlled buys allegedly occurred. Defendant fails to show how this singular question affected the trial outcome in light of this evidence.

Regarding the larceny of a vehicle investigation, we agree with the trial court that this evidence was inadmissible. The prosecutor explained that there was an unverified statement that Dubovsky had been involved, but the statement was hearsay, and "may come to nothing at this point." Moreover, based on the unverified statement, Dubovsky was not the person who allegedly stole the vehicle. Dubovsky had not been charged or interviewed, and was not the main suspect. There is no indication that, at the time of trial, these circumstances had changed.

-5-

Given that there was no conviction, MRE 609(a) was inapplicable. Moreover, given that there was no arrest, *Layher*'s holding is inapplicable. See *Layher*, 464 Mich at 768-769. Although MRE 608(a) allows for admission of evidence of specific instances of conduct to attack a witness's credibility on cross-examination, this is within the discretion of the trial court, and the other rules of evidence are still applicable, such as MRE 402 and MRE 403. Evidence must be relevant, MRE 402, and relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence," MRE 403. Based on the prosecutor's information, this investigation had no relevance because Dubovsky's involvement was dubious at best, and defendant provided no information to the contrary.

## B. THE OFFICERS' TESTIMONY

Defendant contends that portions of the KIND Team officers' testimony were plain error because the officers provided expert testimony without being qualified as such. We disagree.

Because defendant failed to object to the testimony, this issue is unpreserved. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001); MRE 103(a)(1). Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). The defendant must show that an error occurred, that the error was plain, and that the error affected the defendant's substantial rights. *Id*. at 763. In order to warrant reversal, the error must be clear and obvious, and it must have prejudiced the defendant such that the error "affected the outcome of the lower court proceedings." *Id*.

Witnesses must have personal knowledge of the matters on which they testify. MRE 602. For lay witnesses, their "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." MRE 701. Expert witnesses are governed by MRE 702:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Based on the cases he cites on appeal, defendant likens the complained-of testimony to "drug profile" evidence. "Drug profile evidence has been described as an informal compilation of characteristics often displayed by those trafficking in drugs." *People v Murray*, 234 Mich App 46, 52; 593 NW2d 690 (1999) (quotation marks and citations omitted). "Drug profile evidence is essentially a compilation of otherwise innocuous characteristics that many drug dealers exhibit, such as the use of pagers, the carrying of large amounts of cash, and the possession of razor blades and lighters in order to package crack cocaine for sale." *Id*. at 52-53. A profile is "an investigative technique" and "nothing more than a listing of characteristics that in the opinion of law enforcement officers are typical of a person engaged in a specific illegal activity." *Id*. at 52

(quotation marks and citation omitted). For such evidence to be admissible, it must be testified to by a qualified expert witness; police officers may be qualified as such experts. *Id*. at 53.

The officers testified about how a controlled buy is conducted, how confidential informants are selected, how the controlled buys occurred in this case, and how Dubovsky performed in this case. This was not a case in which the officers discussed "innocuous characteristics that many drug dealers exhibit[.]" *Id*. at 52-53. Drug paraphernalia and other items were not involved in this case; it was the controlled buys and the process in which they were performed. The officers did not testify about "a listing of characteristics that in the opinion of law enforcement officers are typical of a person engaged in a specific illegal activity." *Id*. at 52.

Additionally, the officers did not testify about a topic of "scientific, technical, or other specialized knowledge," MRE 702, regarding Dubovsky's veracity; the officers testified about the selection process, confidential informants, and their work with Dubovsky, all of which they had personal knowledge. MRE 602. The officers were part of the KIND Team and had extensive experience in controlled buys and with confidential informants. They had prior experience working with Dubovsky from 2014. Furthermore, the officers did not improperly testify about Dubovsky's character for truthfulness under MRE 608(a)(2); rather, they testified about the informant selection process and how they determined whether to work with an informant, which was "rationally based on" their own perceptions and "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." MRE 701.

## C. PROSECUTORIAL MISCONDUCT

Next, defendant argues that the prosecutor engaged in misconduct through several closing remarks. We disagree.

Defendant failed to object and request a curative instruction, thereby leaving this issue unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Unpreserved claims of misconduct are reviewed "for outcome-determinative, plain error." *People v Seals*, 285 Mich App 1, 21-22; 776 NW2d 314 (2009). This Court will reverse "only when the plain error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 22. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *Id*.

A defendant has the right to a fair and impartial trial. US Const, Am VI; Const 1963, art 1, § 20. "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial (i.e., whether prejudice resulted)." *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). Prosecutorial misconduct must be examined on a case by case basis, and the prosecutor's statements must be evaluated in context. *Id*. at 272-273. "[T]he prosecutor is permitted to argue the evidence and all reasonable inferences arising from it." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).

The first portion of the prosecutor's remarks that defendant takes issue with is when the prosecutor said during closing argument:

K.I.N.D.'s conducted over a thousand buys in the last two decades. This means that over a thousand times in our community, they intercepted drugs that didn't go to somebody who is an addict, who is using. About a thousand times. That's a thousand people that the drugs did not go to, a thousand people they saved.

It doesn't feel great giving people consideration. It's not easy to have one get his case dismissed and one not, but the greater good is those thousand substances that did not land in the hands of our citizens.

The Defense will want you to focus on Mr. Dubovsky's case that was dismissed. Just remember there's many other cases that people won't have to use because of what he did.

Defendant provides as authority a federal case from the Sixth Circuit Court of Appeals, *United States v Solivan*, 937 F2d 1146, 1153, 1155, 1157 (CA 6, 1991),[1] in which the court held that remarks made by the prosecutor deprived the defendant of a fair trial, were not harmless error, and warranted a new trial. The prosecutor in *Solivan* made the following remarks:

> *What you're listening to is a wholesale distributor of narcotics, cocaine*[,] *discuss her business affairs* and complain about her busy schedule, the lack of good product and the trouble she's having getting this stuff up here now. And I'd submit to you, folks, that *she's been caught now. And I'm asking you to tell her and all of the other drug dealers like her*—(defense counsel's objection and Court's response omitted)—*[t]hat we don't want that stuff in Northern Kentucky . . . .* [*Id*. at 1148.]

The court stated the general rule that, "[u]nless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible." *Id*. at 1151. In holding that these remarks were improper, the court reasoned:

> In the instant case, we examine closely the substance of the prosecutor's statements to determine whether they were calculated to inflame. Our determination will depend on whether the statements appeal to community interests in light of current events and the nature of the specific case. In the case before us, the effect of the prosecutor's comments was to suggest to the jury that, because of defendant's participation in the drug trade in northern Kentucky, the drug problem facing the jurors' community would continue if they did not convict her. It is error for a prosecutor to direct the jurors' desires to end a social problem toward convicting a particular defendant. [*Id*. at 1153.]

We believe that the prosecutor's remarks in the present case are distinguishable from those in *Solivan*. Unlike in *Solivan*, the prosecutor in the present case did not tell the jury to "send a

---

[1] "Although state courts are bound by the decisions of the United States Supreme Court construing federal law, there is no similar obligation with respect to decisions of the lower federal courts." *People v Patton*, 325 Mich App 425, 444 n 3; 925 NW2d 901 (2018) (quotation marks and citation omitted).

message" to drug dealers in the area. Dubovsky's credibility as a witness and informant was an aspect of this case that was attacked by defendant, and the prosecutor simply defended this in her closing remarks. The remarks were not meant to "incite the passions and prejudices of the jurors" regarding the drug trade in the community. *Id*. at 1151.

Defendant next contends that the prosecutor's use of the phrase "red herring" was improper. The prosecutor said, "We all know what a red herring is. Please be careful to look out for those. Not having photos, not having videos, not having recordings: I think it's been more than explained why they don't have those. Not having them is red herring [sic]." This is unlike *People v Dalessandro*, 165 Mich App 569, 579; 419 NW2d 609 (1988), which defendant cites for support, in which the prosecutor stated in closing remarks that the defense was " 'a sham meant to mislead' " the jury and " 'a bunch of lies.' " The issue in *Dalessandro* was not the prosecutor's "red herring" remark; rather, "the prosecutor's argument attacked defense counsel and suggested to the jury that defense counsel was intentionally trying to mislead the jury. Such argument was improper." *Id*. at 580. The prosecutor's remarks in the present case are distinguishable because she did not argue to the jury that the defense was attempting to intentionally mislead them. Rather, the prosecutor was merely responding to defendant's strategy of repeatedly asking witnesses about the lack of photographs, videos, and other physical evidence; the prosecutor was merely addressing this and asking the jury to look at the "big picture," and remember the explanations put forth by the officers about maintaining the confidentiality of informants. See *People v Watson*, 245 Mich App 572; 629 NW2d 411 (2001) ("[A]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument.") (quotation marks and citation omitted).

Defendant also takes issue with the prosecutor's following remarks because he contends that they constituted improper vouching for Dubovsky's credibility:

> When Andrew Dubovsky was originally interviewed, he gave multiple names, they said. They compare it to their names. That's how they get his credibility. Do they fully trust him? I don't think they trust any C.I. fully. . . . There are still body mic's, they're still strip searched. It's not a fully-trusting situation; it's a controlled situation.
>
> * * *
>
> [Lieutenant Joseph William Menghini] testified how he worked with Mr. Dubovsky before. In this set of cases, there were seven buys in to five people over two states, no questions, no fears of him being deceptive, talked about having deceptive C.I.s—it's not like it doesn't happen. Didn't happen in this one. Nothing out of the ordinary. To go through about a thousand deliveries and have nothing out of the ordinary says something. That's because nothing out of the ordinary happened on this one.

It is well-established that

> a prosecutor may not vouch for the credibility of his witnesses by *implying that he has some special knowledge of their truthfulness*. But a prosecutor may comment

on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes. [*Thomas*, 260 Mich App at 455 (citations omitted; emphasis added).]

The prosecutor's remarks were not improper because she did not imply that she had special knowledge about Dubovsky's truthfulness; rather, she merely commented on the process in which confidential informants were selected and the officers' testimony that, based on their experiences with him, Dubovsky was not a deceptive informant.

Finally, defendant takes issue with the prosecutor's remarks about the perjury charge against Dubovsky: "And, yes, there was a perjury case dismissed a few years ago against Mr. Dubovsky because I have to prove everything beyond a reasonable doubt. If I can't, I can't go forward. We have to." The prosecutor implied that she did not bring perjury charges against Dubovsky because she did not believe she could prove it beyond a reasonable doubt, and this aligned with her remarks made at the motion hearing prior to trial. The prosecutor did not suggest that she had special knowledge about Dubovsky's truthfulness at the trial.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that his trial counsel rendered ineffective assistance of counsel. We disagree.

A defendant must move in the trial court for a new trial or evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). Defendant failed to do so, leaving this issue unpreserved. *Id*. The determination of whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *Trakhtenberg*, 493 Mich at 47. Findings of fact are reviewed for clear error while questions of constitutional law are reviewed de novo. *Id*. This Court reviews an unpreserved issue concerning ineffective assistance for errors apparent from the record. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). "If the record does not contain sufficient detail to support defendant's ineffective assistance claim, then he has effectively waived the issue." *Id*. at 186 (quotation marks and citation omitted).

There is a strong presumption that trial counsel " 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,' " *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984), and a defendant has a "heavy burden" to show otherwise, *Seals*, 285 Mich App at 17 (quotation marks and citation omitted). For an ineffective assistance of counsel claim to be successful, a defendant must show: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

"A defendant must also show that the result that did occur was fundamentally unfair or unreliable." *Lockett*, 295 Mich App at 187. Furthermore, examination of counsel's actions must

be "highly deferential" and without the benefit of hindsight, *Strickland*, 466 US at 689, and there is a "strong presumption" that counsel's actions arose from "sound trial strategy," *Trakhtenberg*, 493 Mich at 52. This Court must not "substitute [its] judgment for that of counsel on matters of trial strategy . . . ." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). Trial counsel has no duty to make a meritless or futile objection. *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015).

Defendant first argues that his trial counsel was deficient for failing to object to the officers' improper expert testimony. As previously discussed, the officers did not offer improper expert testimony, but merely testified concerning matters within their observations and experiences as members of the KIND Team. Defendant next argues that trial counsel was deficient for failing to object to the prosecutor's closing remarks. As previously discussed, the prosecutor's remarks were not improper. The prosecutor reiterated to the jury that informants such as Dubovsky had a place in law enforcement activities. The prosecutor did not suggest to the jury that the defense was intentionally trying to mislead the jury, nor did she suggest that she had special knowledge about Dubovsky's truthfulness or the perjury charge.

Defendant contends that trial counsel was deficient for failing to impeach Dubovsky with a 2019 retail fraud conviction. MRE 403 provides that evidence may be excluded for being needlessly cumulative. Dubovsky testified concerning his perjury charge, his deal with the KIND Team, his prior dismissal of charges, and his drug use. Defendant's trial counsel impeached Dubovsky with his perjury charge. Accordingly, trial counsel thoroughly explored Dubovsky's credibility for the jury to consider. Defendant further contends that his trial counsel was deficient for providing an incomplete paragraph in his written response to the prosecutor's motion in limine. This was clearly a typographical mistake and did not compromise defendant's response to the prosecutor's motion. The rest of the response adequately conveyed defendant's arguments, and trial counsel reiterated these at the hearing.

Finally, defendant argues that trial counsel was deficient for conceding that an element of theft was contained in defendant's second-degree home invasion conviction. As previously discussed, defendant's PSIR shows that he was charged with two counts of second-degree home invasion and one charge of receiving and concealing stolen property. Regardless, even if trial counsel was deficient, defendant again fails to show how the single question asked of him was outcome-determinative given the vast array of evidence against him.

E. SUFFICIENCY OF THE EVIDENCE

Defendant contends that there was insufficient evidence to support his delivery of an imitation controlled substance conviction. We disagree.

A claim of insufficient evidence is reviewed de novo. *People v Solmonson*, 261 Mich App 657, 661; 683 NW2d 761 (2004). All "factual conflicts are to be viewed in a light favorable to the prosecution." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748, amended 441 Mich 1201 (1992). The appellate court must "view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. Evidence can be circumstantial or it may be drawn from reasonable inferences. *Solmonson*, 261 Mich App at 661.

MCL 333.7341(3) provides: "Except as provided in subsection (7), a person shall not manufacture, distribute, or possess with intent to distribute, an imitation controlled substance." MCL 333.7341(1)(a) provides that " 'Distribute' means the actual, constructive, or attempted transfer, sale, delivery, or dispensing from one person to another of an imitation controlled substance." Defendant's sole argument is that there was insufficient evidence to show that, during the November 9, 2018 controlled buy, he *knew* the substance was a controlled substance. The plain language of the statute provides that "a person shall not . . . distribute . . . an imitation controlled substance." MCL 333.7341(1)(a). Accordingly, the prosecutor was required to prove that defendant delivered an imitation controlled substance. The evidence presented at trial provided support for a rational trier of fact to conclude that defendant delivered such a substance.[2]

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Kathleen Jansen
/s/ Michelle M. Rick

---

[2] In light of our conclusion that sufficient evidence was presented to support a conviction of delivery of an imitation controlled substance, we need not consider defendant's related argument that he would be entitled to resentencing if the conviction were vacated.