*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DEMONE ANTONIA ALLEN,

Defendant-Appellant.

FOR PUBLICATION
May 08, 2025
1:13 PM

No. 352625
Wayne Circuit Court
LC No. 19-004162-01-FC

Before: MURRAY, P.J., and K. F. KELLY and D. H. SAWYER[*], JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of second-degree murder, MCL 750.317; being a felon in possession of a firearm ("felon-in-possession"), MCL 750.224f; carrying a concealed weapon, MCL 750.227; and two counts of carrying a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 35 to 55 years' imprisonment for the murder conviction, 4 to 15 years' imprisonment for the felon-in-possession conviction, 4 to 15 years' imprisonment for the conviction of carrying a concealed weapon, and five years' imprisonment for each of the felony-firearm convictions. Defendant raises several issues on appeal, many of which we conclude are meritless. However, because defendant was deprived of a fair trial as a result of the trial court's decision to deny his request for a self-defense instruction, we reverse defendant's second-degree murder conviction and corresponding felony-firearm conviction and remand for a new trial on those counts only. We otherwise affirm defendant's convictions.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of the shooting death of the victim, Robert Jefferson, at a "repast" (a memorial service) held for Michelle Thompson on April 13, 2019. Defendant attended the repast and arrived at approximately 2:30 p.m., carrying a concealed handgun, which he was not allowed to possess as a convicted felon. There is no dispute that defendant shot and killed the victim after

_____

[*] Former Court of Appeals Judge, sitting on the Court of Appeals by Assignment.

-1-

the two got into an argument, as the entire shooting was captured by video cameras set up in the banquet hall. However, no audio was captured by the cameras.

At trial, Latrise Martin testified that after taking a smoke break outside the repast, she returned inside the hall to see her cousin, Tonisha Martin, crying in a corner. Michelle Martin and defendant, who were romantically involved, were with Tonisha as well. Latrise stated she went over to console Tonisha and, when she got there, noticed that defendant was talking to Michelle and "had a look on his face," indicating that defendant was "getting hostile." After a few moments, the victim approached the group.

Latrise testified that she could not recall what the victim said when he approached, but defendant testified that the victim told defendant to "get out of their face." Latrise attempted to intervene between the victim and defendant, who were becoming increasingly agitated. After a moment, the victim set a cup down and appeared to push Latrise, at which point defendant asked the victim if he wanted to "take it outside." Defendant claimed that he was angry because he did not understand why the victim himself was so angry and wanted to intervene. Defendant testified that after he asked the victim whether he wanted to "take it outside," the victim stated that he was going to "f*** [defendant] up" and told defendant he was a "killer." After a few brief seconds, after the victim approached defendant once again, defendant pulled out his handgun and shot the victim. It was defendant's contention at trial that he believed the victim was reaching for a gun in his pocket and shot the victim in self-defense. After the shooting, defendant is seen on the video calmly walking up to the victim's body, standing over him for a moment, and then leaving the building. Defendant drove away in a Cadillac and did not call the police.

Michelle Martin did not testify at trial; however, certain statements she made, including to law enforcement, were read into the record at trial.[1] Michelle noted that the victim and defendant had gotten into an argument at the repast and recalled that the victim told defendant, "N**** you not about to keep getting in my cousin's face." According to Michelle, defendant responded: "N****, what?" and then heard the gunshot. Michelle's text messages to a friend were also introduced, in which Michelle wrote that the victim "said something to [defendant about] being in my face" and defendant "said something back and then shot [the victim]." Michelle also wrote that defendant "didn't want nobody in my face."

At the close of the proofs, defendant sought a self-defense jury instruction under M Crim JI 7.16. The trial court denied the request, first noting that defendant was carrying a firearm for at least four hours before the shooting. The court reasoned:

> [T]here was testimony by the Defendant that during his verbal exchanges with the [victim] he was willing to go outside and fight with [the victim]. He didn't demonstrate any fear. Then he was still in possession of the firearm and he said he

---

[1] The statements were admitted under MRE 804(b)(6), which allows for the admission of hearsay statements "offered against a party that wrongfully caused—or encouraged—the declarant's unavailability as a witness, and did so intending that result." The admission of these statements will be addressed later in this opinion.

wanted to settle it. And, what did he mean by settle it—that we could go outside and fight.

That, in the Court's mind does not support a finding that he honestly and reasonably believed that the use of deadly force was necessary to prevent imminent death or great bodily harm. So for those reasons, and relying on the [*Guajardo*][2] application or analysis, the Court will decline to give the self defense instruction in this case.

Defendant was convicted and sentenced as noted. Defendant subsequently moved for a new trial, arguing that the trial court erred when it denied his self-defense instruction. Defendant asserted that the evidence supported the instruction and averred that under the common law, there is no requirement that the defendant not be committing another crime, such as being a felon-in-possession, when he employs self-defense. Defendant also argued that his rights to due process and confrontation were violated by the admission of Michelle Martin's various statements because he did not procure Michelle's unavailability. Lastly, defendant argued that the prosecutor had a duty to disclose the contents of the victim's cellular telephone but failed to do so.

After an evidentiary hearing, the trial court denied defendant's motion. The court deemed Michelle Martin's testimony during the hearing to not be credible. Moreover, the court noted that the text messages were not admitted as substantive evidence but instead were admitted for impeachment purposes. The court also ruled that there was no instructional error related to self-defense because: (1) defendant did not have a reasonable belief that possession of a firearm was justified to prevent imminent death or great bodily harm because defendant invited and challenged Jefferson to "take it outside"; and (2) there was no evidence that defendant had a reasonable and honest belief that use of deadly force was necessary to prevent imminent death or great bodily harm. Finally, the trial court found the prosecutor was not under an obligation under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), to disclose the contents of the phone.

Defendant appealed by leave with this Court and, while his appeal was pending, moved to remand for an evidentiary hearing and new trial. Defendant argued that a new trial is needed because of newly discovered evidence in the form of testimony from Tonisha Martin. Defendant also incorporated arguments from his Standard 4 brief contending that his trial counsel was ineffective by failing to suppress the surveillance video from the banquet hall and by failing to properly investigate the case. We granted the motion, specifying that remand was limited to these two issues raised in the motion to remand. *People v Allen*, unpublished order of the Court of Appeals, entered July 7, 2023 (Docket No. 352625).

At the hearing on remand, Tonisha Martin and trial defense counsel testified. Defense counsel testified that he did not believe there was a legal basis to object to the authenticity of the video, which is why he did not challenge it on that basis. Tonisha testified that she is Michelle's sister and that she was the one who was crying in the corner of the hall. She knew defendant because he is her husband's best friend and because defendant had been dating Michelle. She stated that on the day of the repast, the victim told Tonisha that he wanted to "get with" Michelle,

---

[2] *People v Guajardo*, 300 Mich App 26; 832 NW2d 409 (2013).

and when Tonisha told him that Michelle had a boyfriend, he did not care and purportedly said, "fuck that n*****." Tonisha also stated that both defendant and the victim at some point suggested that they take their dispute outside. After both men said this, Tonisha heard the pop of the gun and saw the victim fall.

The trial court denied defendant's motion for a new trial. With regard to whether a new trial was warranted on the basis of newly discovered evidence, the court ruled that Tonisha's testimony was not newly discovered because defendant could have, using reasonable diligence, discovered and produced it at trial. Moreover, the court found that the evidence was cumulative and that it would not have made a difference for the verdict. The trial court also concluded that defense counsel had no valid legal objection to the video evidence being admitted on the basis of lack of authentication and, therefore, was not ineffective for failing to object.

## II. SELF-DEFENSE

Defendant first argues that the trial court erred when it denied his request for a self-defense instruction. Defendant contends that the fact he was a felon-in-possession at the time of the shooting was not relevant to whether he was entitled to an instruction under the common law, under which there is no requirement that defendant not be committing a crime while also employing self-defense. We agree that the trial court's decision to deny defendant's request for a self-defense instruction was error and that the error was outcome-determinative. Accordingly, we reverse defendant's second-degree murder conviction and corresponding felony-firearm conviction and remand for a new trial on those counts.

### A. STANDARDS OF REVIEW

"The determination regarding whether a jury instruction is applicable to the facts of a case is reviewed for an abuse of discretion; however, questions of law relative to jury instructions are reviewed de novo." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). A court abuses its discretion when it selects an outcome falling outside the range of reasonable and principled outcomes. *People v Dixon-Bey*, 321 Mich App 490, 496; 909 NW2d 458 (2017).

### B. ANALYSIS

"A court must properly instruct the jury so that [the jury] may correctly and intelligently decide the case. The instruction to the jury must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018) (citations omitted). "A defendant asserting an affirmative defense must produce some evidence on all elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense." *People v Guajardo*, 300 Mich App 26, 34-35; 832 NW2d 409 (2013) (quotation marks and citation omitted). Indeed, because a defendant only need to produce "some" evidence in support of the elements of an affirmative defense, the defendant's burden is not a heavy one. *People v Leffew*, 508 Mich 625, 644; 975 NW2d 896 (2022). "The sufficiency of the evidence of a defendant's self-defense theory is for the jury to decide under proper instructions[.]" *People v Rajput*, 505 Mich 7, 11; 949 NW2d 32 (2020) (quotation marks and citation omitted).

Self-defense may be invoked by a criminal defendant under the common law, under which the defendant must present evidence that (1) he honestly and reasonably believed that he was in danger, (2) the danger feared was death or serious bodily harm, (3) the action taken appeared at the time to be immediately necessary, and (4) he was not the initial aggressor. *People v Riddle*, 467 Mich 116, 127; 649 NW2d 30 (2002). Moreover, "unless attacked inside one's own home, or subjected to a sudden, fierce, and violent attack, a person has a common-law duty to retreat, if possible, as far as safely possible." *People v Conyer*, 281 Mich App 526, 530 n 2; 762 NW2d 198 (2008). The common law self-defense instruction in M Crim JI 7.16(1) reflects this duty to retreat, which states:

> (1) A person can use [force / deadly force] in self-defense only where it is necessary to do so. If the defendant could have safely retreated but did not do so, you may consider that fact in deciding whether the defendant honestly and reasonably believed [he / she] needed to use [force / deadly force] in self-defense.

Under the Self-Defense Act ("SDA"), MCL 780.971 *et seq.*, the Legislature "codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *Guajardo*, 300 Mich App at 35 (quotation marks and citation omitted). "Specifically, the SDA modified the common law's duty to retreat that was imposed on individuals who were attacked outside their own home or were not subjected to a sudden, fierce, and violent attack." *Id*. (quotation marks and citations omitted). "However, the SDA continues to require that a person have an honest and reasonable belief that there is a danger of death, great bodily harm, or a sexual assault in order to justify the use of deadly force." *Id*. at 35-36. The SDA states, in relevant part:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.
>
> (b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or herself or of another individual. [MCL 780.972(1).]

In the proceedings below, the prosecution argued that because defendant was illegally possessing the firearm, no self-defense instruction was warranted. The prosecutor stressed that defendant, who was ineligible to possess a firearm, did not temporarily possess the weapon and instead possessed it for most of the day leading up to the shooting. Defense counsel, on the other hand, acknowledged that defendant was not seeking an instruction under the SDA but rather one under the common law, as described in M Crim JI 7.16(1). Ultimately, the trial court denied defendant's request, emphasizing that defendant "had possession of a firearm for approximately four hours before the shooting." The court also noted, however that defendant "was willing to go outside" with the victim and "didn't demonstrate any fear." The court concluded that the evidence

"does not support a finding that he honestly and reasonably believed that the use of deadly force was necessary to prevent imminent death or great bodily harm."

It is apparent, therefore, that the trial court based its denial of defendant's request on two factors: (1) defendant possessed a firearm before the shooting, which he was not legally allowed to do; and (2) defendant was at least a co-equal aggressor in the fight and, therefore, could not have believed the use of deadly force was necessary. We will address each rationale in turn.

The first rationale—that defendant was unlawfully possessing a firearm for hours before the shooting occurred—was improper because defendant was not seeking an instruction under the SDA. In the trial court, defense counsel stated that as a felon-in-possession, defendant was permitted to "use deadly force" but lost his "right to claim that you have a right to stand your ground. At that point, you have the duty to retreat." Defense counsel continued that "when you are dealing with a [felon-in-possession], who does use deadly force, he forfeits that right to stand his ground and he has a duty to retreat."

Defense counsel accurately stated the law. As someone who was committing a crime at the time the shooting occurred—defendant was a convicted felon in possession of a handgun—he was not entitled to seek an instruction under the SDA, which would have potentially allowed him to argue that he had no duty to retreat before using deadly force. See MCL 780.972(1). But as demonstrated above, defendant did not seek an instruction that included a duty to retreat, and the trial court's reliance on the fact that defendant was a felon-in-possession at the time of the shooting when denying the request was erroneous. Thus, we must turn to the trial court's second rationale for denying defendant's request—that defendant was willing to go outside and fight and, therefore, did not have a reasonable and honest belief that the use of deadly force was necessary.

The trial court relied heavily on the fact that defendant was—if not the initial aggressor— at least ready and willing to fight the victim and therefore had not demonstrated he was in fear of death or bodily harm. However, defendant also testified that during the altercation and after defendant suggested they "take it outside," the victim said that he was going to "fuck [defendant] up" and that he was a "killer." Defendant stated that shortly after, he thought he saw the victim reach for a gun from his pocket. While defendant's timeline of events may have been somewhat hard to believe, and the shooting is clearly recorded on video, it was not the function of the trial court to determine whether defendant was being truthful. The court, in other words, usurped the role of the jury by determining that defendant was not credible and that he did not have an honest and reasonable belief that his life was in imminent danger. The court specifically noted, for example, that defendant had possessed the handgun for hours before the incident and how defendant's challenge to the victim to go outside reflected no fear of imminent death or great bodily harm.

While the fact that defendant assertively asked the victim to meet him outside shows that there may have been no fear of imminent death or great bodily harm at that precise moment, defendant stated that he thought he saw a gun drawn after he issued that challenge. We are aware of no doctrine from which we could conclude that because defendant at one point had no fear of imminent death, that he cannot hold that belief later when circumstances change. See, e.g., *Rajput*, 505 Mich at 12 (stating that if the defendant is a willing participant in an altercation, the defendant must take advantage of any ability to retreat from the situation, but is not foreclosed from asserting

self-defense). In short, while defendant's self-serving testimony was inherently suspect, it was for the jury to decide whether his version of events was more believable. See *Rajput*, 505 Mich at 11. As stated, a defendant's burden in proving whether a jury instruction is warranted is slight. *Leffew*, 508 Mich at 644. Thus, because there was sufficient evidence to support an instruction on self-defense for the murder charge, the trial court abused its discretion when it denied defendant's request for a self-defense instruction.

Moreover, the trial court's error in denying defendant's motion was not harmless. See *Riddle*, 467 Mich at 124 ("[I]f an applicable instruction was not given, the defendant bears the burden of establishing that the trial court's failure to give the requested instruction resulted in a miscarriage of justice."). Reversal is appropriate only "after examining the nature of the error in light of the weight and strength of the untainted evidence, it affirmatively appears that it is more probable than not that the error was outcome determinative." *Id*. at 124-125; see also MCL 769.26 ("No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of . . . the improper admission or rejection of evidence . . . unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."). "[T]he Sixth Amendment's clear command that the state must afford a trial with a jury at the defendant's request in serious criminal cases." *People v Duncan*, 462 Mich 47, 54; 610 NW2d 551 (2000). "This means that when a jury is empaneled, the jury, not a judge, renders the verdict." *Id*. The trial court, however, usurped the jury's role when it determined that defendant's version of events, in essence, was not believable. Had the jury been presented with defendant's requested instruction and had the jury believed defendant's testimony, there is a high likelihood defendant would have been acquitted of the murder charge. Accordingly, the error was outcome-determinative and we must reverse defendant's second-degree murder and felony-firearm conviction and remand the case to the trial court for a new trial on those counts.

## III. WITNESS CREDIBILITY

Defendant also argues on appeal that the trial court abused its discretion when it permitted the prosecutor to ask defendant to comment on the credibility of other witnesses. While we have already determined that defendant is entitled to a new trial regarding the murder and related felony-firearm convictions, and the challenged testimony relates only to those charges, we will briefly address defendant's argument.

## A. STANDARDS OF REVIEW

This Court reviews evidentiary decisions for an abuse of discretion. *People v Layher*, 464 Mich 756, 761; 631 NW2d 281 (2001). A court abuses its discretion when it selects an outcome falling outside the range of reasonable and principled outcomes. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Whether a defendant's right of confrontation has been violated is reviewed de novo. *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018). But any of the trial court's findings of fact are reviewed for clear error. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). A finding is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake was made. *People v Chaney*, 327 Mich App 586, 588 n 1; 935 NW2d 66 (2019).

## B. ANALYSIS

It is well established that "it is not proper for a prosecutor to ask a defendant to comment on the credibility of prosecution witnesses since a defendant's opinion on such a matter is not probative and credibility determinations are to be made by the trier of fact." *People v Knapp*, 244 Mich App 361, 384; 624 NW2d 227 (2001) (quotation marks and citation omitted). While a prosecutor may not ask a defendant to comment on the credibility of a witness, it is not improper for a prosecutor to ask the defendant which facts he disputes. See *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003).

During the trial, while defendant was being cross-examined by the prosecutor, he was asked questions such as: "Don't you think it's funny that neither [Latrice or Michelle] hear [the victim] say he's a killer and he's going to kill you?"; and "So Michelle is lying in her statement[?]". Defendant contends that not only were these questions irrelevant, they had the tendency to lower the burden of proof in favor of the prosecutor. We agree. The questions posed to defendant had no purpose other than to determine whether defendant believed the witnesses were lying about their version of events. As stated, such a determination is properly left to the jury, and asking defendant to comment on the witnesses' credibility usurped the jury's role as factfinder. However, because we have already determined that defendant is entitled to a new trial regarding his murder and related felony-firearm conviction, we do not need to decide whether the error in admitting the testimony was harmless. See *Knapp*, 244 Mich App at 384.

## IV. REMAINING ARGUMENTS

Defendant raises several other arguments on appeal, all of which we find to be meritless. Specifically, defendant contends that he was denied a fair trial because of the prosecutor's conduct during the trial. Defendant also contends that admission of Michelle Martin's statements violated his right to confront witnesses before him, and that his trial counsel was constitutionally ineffective. We disagree.

A prosecutor has the right to introduce evidence that he or she legitimately believes will be accepted by the trial court. *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999). As a result, a claim of prosecutorial misconduct cannot be predicated on a good-faith effort to admit evidence. *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007). Assuming that even if some of the disputed evidence should not have been admitted, defendant has not offered anything to support the conclusion that the prosecutor did not act in good faith when she asked questions on these various topics. For example, during trial the prosecutor referred to defendant's associates as his "boys," and defendant contends this was a racially-charged characterization that requires reversal. Although the use of the term "boy" can denote racial animus, there is no evidence that is what occurred here. The prosecutor was referring to defendant's unknown associates he was talking with on the phone, and there is no evidence that the prosecutor knew the race of these other individuals. Accordingly, we reject defendant's challenge to his convictions on the basis of the prosecutor's conduct.

Defendant also argues that his right to a fair trial was violated when the police and prosecutor disposed of the victim's cellular telephone before providing the defense with the opportunity to inspect it. According to defendant, the police acted in bad faith when they misled

defense counsel about what happened to the victim's phone up until the final evidentiary hearing, when they provided multiple, contradictory explanations on what they knew and when they knew it. However, defendant completely fails to explain how the contents of the victim's telephone would have been used to exonerate him. As the trial court noted, the entire shooting was captured on video, and there is no question that defendant shot and killed the victim. Even if the victim had evidence on his telephone that he intended to attack defendant, such evidence would not provide a defense for defendant, who testified he shot the victim because he thought he saw the victim reach for a gun from his pocket. There is no question that no gun was ever found on or near the victim. Thus, any claim for self-defense was solely dependent on a jury believing defendant. See *People v Adamowicz*, 503 Mich 880 (2018); *People v Green*, 113 Mich App 699, 704; 318 NW2d 547 (1982) (stating that in a self-defense claim, the accused's conduct is judged according to how the circumstances appeared to the accused, not how they actually were). The contents of the victim's telephone would have had absolutely no impact on that determination.

Next, defendant contends that defense counsel was constitutionally ineffective for failing to object to the admission of the video showing the shooting. According to defendant, defense counsel should have objected to the admission of the video evidence because the videos could not be authenticated as a result of (1) "Channel 1" being missing and (2) the "event file" in Exhibit 83 being altered and edited.

The determination whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id.* Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *LeBlanc*, 465 Mich at 578. Generally, to establish a claim of ineffective assistance, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

The fact that the video from one of the channels of video feed was not admitted into evidence does not mean that the other channels were somehow inadmissible. Sgt. Steven Ford testified that one of the camera feeds he saw had no picture and instead stated "no link." Consequently, there was no camera feed from that channel to view or download. Presumably, because Sgt. Ford downloaded Channels 2, 3, 4, and 5, Channel 1 was the feed that had no camera. Those other channels had relevant information, and Sgt. Ford testified that he did not edit or modify any of those raw feeds. Sgt. Ford also described Exhibit 83 as an "event file" that showed the events leading up to the shooting on one single clip. He explained that to avoid watching the separate footage from the four different cameras over and over, he "cut the whole entire event into one clip so you can see a continuous video, to show the entire event." Sgt. Ford explained that the raw footage is what he used to make the event file, and the raw footage showed everything included in the event file, plus more. He also explained the steps he took in creating the event file, and, importantly, the footage used to create the file were admitted as separate exhibits.

Under MRE 901(a), authentication of evidence can be "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims," which can be

accomplished through testimony from a witness that the matter is what it is claimed to be, MRE 901(b)(1). Sgt. Ford's testimony satisfies this requirement. Consequently, defense counsel reasonably did not object to the admission of this video evidence. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). Likewise, because the trial court would not have sustained defendant's objection, he cannot establish the requisite prejudice, and defendant is not entitled to a new trial on the basis of ineffective assistance of counsel.

Defendant also contends defense counsel was ineffective for failing to adequately investigate the case. Specifically, defendant claims that his trial counsel should have (1) read the preliminary examination transcript, which would have alerted him that Michelle had appeared at that hearing; (2) provided him with the text messages from his and Michelle's telephones; and (3) interviewed Michelle and Tonisha. Concerning the preliminary examination transcript, defense counsel testified that he read the transcript; thus, defendant's argument lacks a factual basis. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) ("[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]"). Similarly, the lower court record belies defendant's claim that he was not shown the text messages from Michelle's telephone, as defense counsel did show the phone data to defendant, including the text messages, during trial. Lastly, defense counsel's decision to not interview Michelle and Tonisha was objectively reasonable, as Michelle demonstrated a complete unwillingness to testify and Tonisha's testimony was largely duplicative of Latrise's testimony and, therefore, would not have changed the outcome.

Finally, defendant contends that the admission of Michelle Martin's out-of-court statements violated his right to confrontation. At issue are various out-of-court statements from Michelle Martin: (1) her statements contained in a recorded phone call between her and defendant, and (2) her statements made in text messages to defendant and others, and (3) her statements to the police. The court determined that Michelle was unavailable and admitted her statements under MRE 804(b)(6), which provides that hearsay statements made by an unavailable witness are admissible as long as the party against whom the statements are offered "has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness."

The Confrontation Clause applies not only to in-court testimony but also to out-of-court statements introduced at trial. *Crawford v Washington*, 541 US 36; 50-51; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Even then, only out-of-court statements that are testimonial implicate the Confrontation Clause, while nontestimonial, out-of-court statements are merely subject to the normal rules of hearsay evidence. *Id.* at 50-52, 61, 68; see also *People v Taylor*, 482 Mich 368, 374, 377; 759 NW2d 361 (2008). Of the three categories of statements Michelle made, only the statements she made to the police can be considered testimonial. See *Crawford*, 541 US at 51 (noting the stark difference between a person who makes a formal statement to government officials as opposed to casual remarks made to acquaintances). Thus, Michelle's text messages to acquaintances and her conversation over the phone with defendant do not implicate defendant's right to confrontation; their admission is instead governed solely by the rules of evidence. *Id.* at 68.

While it is evident that defendant did not have the opportunity to cross-examine Michelle at trial, the trial court agreed with the prosecution that defendant had forfeited that opportunity. The court relied on the forfeiture-by-wrongdoing rule, which is codified in MRE 804(b)(6), and "provides that a statement is not excluded by the hearsay rule if the declarant is unavailable and the statement is offered against a party that has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." *People v Roscoe*, 303 Mich App 633, 640; 846 NW2d 402 (2014) (quotation marks, citations, and brackets omitted). Notably, this forfeiture-by-wrongdoing rule also acts as an exception to a defendant's right of confrontation. *Id.*

"To admit evidence under MRE 804(b)(6), the prosecution must show by a preponderance of the evidence that: (1) the defendant engaged in or encouraged wrongdoing; (2) the wrongdoing was intended to procure the declarant's unavailability; and (3) the wrongdoing did procure the unavailability." *People v Burns*, 494 Mich 104, 115; 832 NW2d 738 (2013). The court found that defendant told Michelle during a phone conversation that she did not have to appear in court to testify even if she was subpoenaed. This finding was not clearly erroneous. The record shows that in response to Michelle mentioning in a May 22, 2019 phone call that because she has not received a subpoena, she was not going to attend the preliminary examination, defendant said, "Even if they did, do not go." The only logical meaning of this statement was that defendant was telling Michelle that even if she were served with a subpoena, she should not attend the proceeding.

Nor was it clearly erroneous for the trial court to conclude that defendant's statement to Michelle caused her to be unavailable for trial. During the relevant conversation, Michelle stated repeatedly how she was avoiding being served with the subpoena, to which defendant added that if she were to be served with a subpoena, she should not attend. And while it is true that Michelle was never served with a subpoena to appear at trial, defendant's intent was patently clear that he did not want Michelle to appear at trial, which she did not. Therefore, the trial court did not abuse its discretion when it admitted the evidence under the forfeiture-by-wrongdoing rule.

Defendant's second-degree murder conviction and related felony-firearm conviction is reversed and the case is remanded for a new trial on those counts consistent with this opinion. Defendant's remaining convictions are otherwise affirmed. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ David H. Sawyer

-11-